GRANT TRAILER, JR., by W. G. TRAILER, his father and next friend, Appellant, v. CLARA SCHELM, Appellee.

No. 44932.

DECEMBER 12, 1939.

Roscoe S. Jones and J. J. Hess, for appellant.

Harry B. Swan and H. B. White, for appellee.

OLIVER, C. J.—On May 6, 1936, at about 8:30 p. m., Grant Trailer, Jr., then between 14 and 15 years of age while riding

a bicycle north on Walnut street, a paved street in Atlantic, Iowa, collided with the front end of a parked and unlighted automobile and sustained injuries consisting of facial cuts, bruises and the loss of one of his eyes. On account thereof recovery was sought in his behalf from Clara Schelm, the owner of said automobile. The action was predicated upon the alleged negligence of said defendant in unlawfully parking the automobile with its left side, instead of its right side, next to and parallel to the curb, and in so parking it without lights on a narrow street at a place where it was obscured from vision by reason of darkness. At the conclusion of all the evidence the trial court directed a verdict in favor of defendant and judgment was entered accordingly. Hence this appeal.

Under the record the only reasons upon which the ruling of the trial court could have been based were those given by the court, to wit, that plaintiff was guilty of contributory negligence as a matter of law and that the unlawful parking of defendant's automobile was not the proximate cause of the collision and injuries sustained by plaintiff. That defendant left her automobile after dark and without lights of any kind, parked upon Walnut street with its left side next to and parallel to the east curb was indisputably established. Defendant herself so testified.

I. In determining whether or not such parking was the proximate cause of the accident, consideration should be given to certain statutes then in effect. Section 5056, Code of Iowa 1935, provided:

"Manner of parking. It shall be unlawful to stop a motor vehicle on the street, in cities and towns, unless the right side of said vehicle is next to and parallel with the curb * * *."

It may be here noted that by section 4997 of the 1935 Code cities and towns were empowered to adopt ordinances permitting other methods of parking in certain areas. However, as to the location in controversy, no such action appears to have been taken by the city of Atlantic. Therefore, the provisions of section 5056 would be effective.

Section 5045, Code of Iowa 1935, provided:

"Tail lights. Such motor vehicle when in use or parked

upon or immediately adjacent to the traveled portion of the highway shall also display on the rear a lamp so constructed and placed as to show a red light from the rear and throw a white light directed upon the rear registration number and render the numerals thereon visible for at least fifty feet in the direction from which the vehicle is proceeding."

The foregoing section referred to the "period of from one-half hour after sunset to one-half hour before sunrise." Section 5044. The word "highway", as there employed, included city streets. Code of 1935, subsection 5 of section 4863.

Earlier statutory provisions relative to tail lights required them to be exhibited only while the motor vehicle was in motion. See chapter 53, Acts 30th G. A.; chapter 72, Acts 34th G. A.; City of Harlan v. Kraschel, 164 Iowa 667, 146 N. W. 463; Griffin v. McNeil, 198 Iowa 1359, 201 N. W. 78; Leete v. Hays, 211 Iowa 379, 233 N. W. 481.

The first statutory requirement for exhibiting tail lights upon motor vehicles parked after dark was contained in section 5054 of the 1924 Code and applied only to motor vehicles parked upon highways outside of cities or towns. At that time section 5044 of the 1924 Code referred to headlights of vehicles "in use", i. e., in motion. Section 5045 of the 1924 Code related to tail lights of such motor vehicle "when in use". In 1929 section 1, chapter 25, Acts of the Forty-third General Assembly added after the word "use" in Code section 5045 the clause "or parked upon or immediately adjacent to the traveled portion of the highway". It may be noted that sections 5044-d1 and 5044-d2, Codes of 1931 and 1935 adopted by the Forty-fourth General Assembly (chapter 120, section 7) in 1931 did not change the requirements for lights upon motor vehicles of the type here involved.

From the foregoing legislative history it is apparent that section 5045 Code of 1935 did require the display of a red tail light upon the rear of an automobile parked upon a city street at night. Riley v. Guthrie, 218 Iowa 422, 255 N. W. 502.

Therefore, the automobile of appellee in the case at bar was parked in violation of sections 5045 and 5056 of the 1935 Code. Those statutes required said car to face north, and at night to exhibit a red light upon its rear, or south end. Undoubtedly, a purpose of these provisions was the protection

and warning of night traffic, and in this situation particularly north-bound traffic which was required to travel on the right side of the street, in proximity to and in the direction faced by cars lawfully parked at the right-hand, or east, curb. Disobedience thereof would tend to expose such traffic to danger of collision during the hours of darkness, with unlighted parked cars.

So in the case at bar the unlawfully parked car failed to exhibit to plaintiff as he approached from the south the visible warning and indication of its location which the law then in effect required.

Defendant presents no legal excuse for the violation of these statutes. In the absence thereof she was guilty of negligence. Under the circumstances of this case it cannot be said as a matter of law that such negligence was not a proximate cause of the collision. That question was for the jury. Schwind v. Gibson, 220 Iowa 377, 260 N. W. 853.

In the foregoing discussion we have considered the failure to park the right side of the car next to the curb only as a factor in connection with the failure to obey the tail light statute. We do not hold that such reversed parking, under the factual situation here shown, would, in and of itself alone, constitute a proximate cause of the collision. Nor do we intimate whether or not under other situations, such parking could independently constitute such proximate cause. Perhaps it should be said that the motor vehicle code has since been repealed, and statutes differing in various respects have been enacted.

II. In determining whether or not plaintiff was guilty of contributory negligence as a matter of law the evidence must be considered in the light most favorable to him.

Walnut street runs north and south and is intersected by Seventh street and a block north thereof by Sixth street. At this place the street is level, has an over-all width of 80 feet and from curb to curb a width of 24 feet which is paved. The accident happened near the east curb of Walnut street and about 75 feet south of Sixth street. The front of the block to the west is occupied by a school building. On the east side of the street are dwellings and a church which is immediately south of the Sixth street intersection. Just

south of this church is a dwelling house. Defendant's car was parked facing south either approximately in front of this dwelling house or opposite the rear end of the church. It was dark and the street lights were lighted. These appear to have been 200 candlepower electroliers, and according to a witness for plaintiff they were not bright. One of these was located on the west side of the street in the center of the block, another was located at the southwest corner of the intersection of Sixth and Walnut streets. The third was on the northeast corner of said intersection. Each of these lights was from 100 to 150 feet distant from the parked car. There were also lights within the church which shone through certain windows upon the Walnut street side, some of which windows were colored glass, but most of which were said to be frosted glass and clear glass. One window in the church appears to have been open. There was also a light in the alcove in front of the church, but it appears that it was not so placed as to afford any illumination upon the parked car. In the dwelling house immediately to the south of the church a reading lamp was lighted in the living room. Witnesses for defendant testified light from these various sources made the parked car visible.

Plaintiff and a boy friend were riding their bicycles north on Walnut street. They had stopped at the intersection of Seventh and Walnut streets and from that point plaintiff rode ahead of his companion who followed him at a distance of about 50 feet. Apparently they were riding ''not very slow and not very fast''. Plaintiff's bicycle was equipped with a coaster brake and with a small electric headlamp which shone upon the road a few feet ahead of the bicycle. It was dark and this lamp was lighted. Plaintiff rode and coasted north along the street and was watching in that direction. He did not see defendant's parked car. Shortly after plaintiff entered the block in question he saw the lights of a car coming toward him. As he came closer to the car its lights blinded him, he pulled over to his right to avoid it and struck the front of the defendant's automobile. He testified he struck his eye on the top of the radiator cap. After the accident his glasses were discovered hanging on the radiator of the car.

Mr. Reed, the driver of the car which plaintiff met, testi-

fied that he was driving slowly at the time, that his automobile was new, that he had on his dimmers at the time. He estimated his lights illuminated the highway 35 to 40 feet in front of his car. "I cannot say as to them being in proper adjustment. * * * Mr. Cushing tried to adjust them at the time they was adjusted about a week before the 6th of May, but they wasn't satisfactory." Mr. Reed heard the noise of the collision when the front of the Reed car was about even with the front end of defendant's car.

The other boy who was about 50 feet behind plaintiff testified he saw the parked car just before plaintiff struck it but plaintiff testified he (plaintiff) was blinded by the headlights of the approaching car and did not see the parked automobile. In determining its visibility to plaintiff, some of the elements to be taken into account are the effect of the street lights none of which were very near the parked car, the light through the church window about 37 feet east of the curb and a short distance to the north, the light from the reading lamp in the living room of the house 38 feet east of the curb and the headlights of the approaching car before and at the time they blinded plaintiff. It may be noted that as plaintiff rode his bicycle northward it does not appear that the parked automobile was directly in his path, until he pulled over to his right to avoid the approaching car the lights of which blinded him. However, in connection with this situation it should be remembered that the width of the east half of the pavement was only 12 feet and that such width exclusive of the portion occupied by the parked car was only about 7 feet.

Upon the narrow proposition of whether or not prior to the collision plaintiff should have observed the parked automobile in time for him to have avoided it turns the question of his contributory negligence. Under all the circumstances in the record we conclude the proposition is one upon which the minds of reasonable men might differ. Therefore, it should have been submitted to the jury.

We have carefully considered the motion of appellee to dismiss the appeal and the same is overruled.

The order directing a verdict was erroneous and the judgment rendered thereon is reversed.—Reversed.

All JUSTICES concur.