Ray A. Johnson and Gladys Johnson, appellants, v. P. D. Baker and Harlan Wichtendahl, appellees.

No. 50886.

(Reported in 120 N.W.2d 502)

MARCH 12, 1963.

Miller, Miller & Miller, of Cherokee, for appellants.

Shull, Marshall, Mayne, Marks & Vizintos, of Sioux City, Loughlin & Loughlin, of Cherokee, and Evan Hultman, Attorney General, Bruce M. Snell, Jr., and David E. Byers, Assistant Attorneys General, for appellees.

MOORE, J.—On June 28, 1961, a tractor and semitrailer loaded with hot bituminous material while attempting to make a left turn at the base of a steep hill overturned, demolishing the highway patrol car assigned to defendant P. D. Baker and damaging plaintiffs' real and personal property located at the

southeast corner of Bluff and North Second Streets in Cherokee. After being reimbursed for half of their damages, plaintiffs proceeded against defendants Baker and Wichtendahl. Plaintiffs alleged the accident and damage to their property was caused by the negligence of the two defendant highway patrolmen in (a) stopping traffic and conducting a vehicle safety check at a dangerous intersection, (b) causing North Second Street to become completely obstructed at the base of a steep hill with limited visibility from the north, (c) creating a traffic hazard dangerous to life and property, and (d) parking their patrol car in violation of four Cherokee city ordinances. On trial, after the court had overruled defendants' motion for directed verdict, a $1500 jury verdict for plaintiffs resulted. Thereafter the trial court sustained defendants' motion for judgment notwithstanding the verdict. Plaintiffs have appealed.

Plaintiffs assign three errors for reversal: the trial court erred in sustaining defendants' motion for judgment notwithstanding verdict (based on defendants' motion for directed verdict) on the grounds: (1) plaintiffs failed to prove negligence by defendants, (2) said negligence was not a proximate cause of plaintiffs' damage, (3) defendant patrolmen were immune from liability.

The court's ruling was based on the theory defendants' motion for directed verdict should have been sustained. Therefore in considering the propriety of the ruling we must give plaintiffs' evidence the most favorable construction it will reasonably bear. Rule 344(f)2, R. C. P. We review the evidence with this rule in mind. Plaintiffs' home is located on the southeast corner of North Second and Bluff Streets in Cherokee. North Second, a north-and-south street 35½ feet wide, is part of U. S. Highway 59 and State Highways 3 and 5. It is intersected at right angles by Bluff Street, an east-and-west street 30½ feet wide. The intersection is at the base of a steep hill on North Second which curves to the east starting about 300 feet north of the intersection. Because of a high bank on the east side of the curve the intersection is not visible to southbound traffic until the curve has been negotiated.

By Cherokee city ordinances (pleaded and proven by plain-

tiffs) standing or parking of vehicles was prohibited where the curbing was painted yellow or no parking signs were posted. Parking in an intersection or on a crosswalk was also prohibited. Where parking was permitted it was required the vehicle be parked parallel with the edge of the roadway in the direction of the lawful traffic movement, with the right-hand wheels within 18 inches of the curb. Prior to the accident the rounding curb at the southeast corner of the intersection was painted yellow as was the south curb of Bluff Street for at least ten feet east of the intersection. "No parking" signs were also posted on the south side of Bluff Street just east of the intersection and on the east side of North Second south of Bluff.

On the morning of June 28, 1961, defendants met at the highway patrol office in Cherokee and decided to make a traffic check that morning. Such a check was part of their official duties. The time and place was of their own choosing. They decided to make the check just south of the above intersection and proceeded there. Wichtendahl parked the patrol car assigned to him in a root beer stand parking area near the southwest corner of the intersection. Baker parked his patrol car just around the curve of the yellow painted curb at the southeast corner of the intersection, headed northeast. Its right wheels were three feet from the curb. The left front of the patrol car was nine feet north of the south curb, and about 21 feet south of the north curb, of Bluff Street.

Defendants' purpose was to check licenses and equipment. Both defendants knew from experience such checks often disclose faulty equipment, including defective brakes. Baker testified he also knew of a previous tragedy which had occurred when a truck lost its brakes on this North Second Street hill killing several people but gave it no consideration when selecting the site.

After parking their vehicles defendants proceeded to stop traffic and check equipment just south of the intersection. About 20 minutes thereafter while Baker was checking a southbound truck and Wichtendahl had northbound cars stopped on the east side of North Second a tractor-semitrailer loaded with hot bituminous material started down the hill from the north. Its

driver, Robert E. Bergner, was driving within the legal speed limit and had "shifted down" when he approached the hill. The vehicle was equipped with air brakes on all wheels of the tractor-trailer. They had been in good working condition. As soon as the intersection could be seen Bergner observed his path was blocked at the location of the traffic check. He immediately applied his brakes, preparing to make a complete stop but found himself in difficulty due to sand on the street and the movement of the load. He testified the load movement seemed to "jet" his transport. The skidding of the wheels on the sandy street together with the roar of the truck motor, which Bergner was using also to brake his vehicle, attracted defendants' attention. They immediately left their stations and "ran for their lives". Bergner continued his efforts and slowed his vehicle to about 15 miles per hour as he approached the intersection. He decided to make a left turn at the intersection rather than crash into the vehicles blocking his path to the south. In making the turn east on Bluff Street the tractor went through the space between the patrol car and the north curb. The trailer wheels struck the patrol car, causing the trailer to roll over on it. The load of hot bituminous material was dumped into the yard and house of plaintiffs causing considerable damage.

I. Plaintiffs contend the evidence was sufficient to create a jury question as to defendants' negligence. We agree. In the often cited case of Kisling v. Thierman, 214 Iowa 911, 915, 243 N.W. 552, 554, it is said: "* * * where the statute or ordinance has fixed the standard of care, the failure to observe such standard is negligence, and when in the trial of a case—the other elements being proven—it is shown that the defendant failed to observe the standard of care thus fixed, a case is made for the jury in the first instance. In such case, the defendant may offer proof excusing his failure to observe such legal standard of care. If, however, he fails to furnish proof of such legal excuse, then it is accurate to say that negligence is established as a matter of law."

Defendants make no claim of emergency or other legal excuse. Although defendants disputed the evidence of other witnesses that the squad car was parked contrary to the ordi-

nances the jury could have so found. Photographs received as exhibits so indicate. Such parking in the absence of legal excuse is negligence. Trailer v. Schelm, 227 Iowa 780, 288 N.W. 865.

Compliance with statutes and ordinances prescribes only the minimum of prudent conduct. Motorists are also required to exercise the care of the ordinarily prudent person under the circumstances. Langner v. Caviness, 238 Iowa 774, 779, 28 N.W.2d 421, 444, 172 A. L. R. 1135; Knaus Truck Lines, Inc., v. Commercial Freight Lines, 238 Iowa 1356, 1365, 29 N.W.2d 204, 209. The Knaus case holds obstructing traffic may under proper fact showing create a jury question of negligence. We believe this is such a case. Defendants do not seriously argue otherwise. They cite no authority to support the trial court's ruling that the evidence was insufficient to generate a jury question on negligence. They vigorously argue the issues of proximate cause and immunity.

II. Defendants contend the court's ruling was correct for the reason the evidence did not show their negligence, if any, was the proximate cause of the collision of the transport with the patrol car and damages to plaintiffs' property. Authorities agree there may be more than one proximate cause of any accident and damage. 65 C. J. S., Negligence, section 110; 60 C. J. S., Motor Vehicles, section 254; 5A Am. Jur., Automobiles and Highway Traffic, section 238; Lockwood v. Wiltgen, 251 Iowa 484, 490, 101 N.W.2d 724, 728, and citations. Law v. Hemmingsen, 249 Iowa 820, 826, 89 N.W.2d 386, 391, states: "That each person whose negligence concurs or combines to cause injury to another is liable therefor is so well settled citation of authority is hardly necessary." The decision then cites various authorities which need not be repeated here.

In Schwind v. Gibson, 220 Iowa 377, 385, 260 N.W. 853, 857, plaintiff was riding in a car which the driver was unable to stop on a slippery road before striking the parked truck of the defendant. In considering the question of proximate cause, it is said:

"It will not do to say as a matter of law that his negligence in permitting his truck to stand upon the pavement without lights was not a proximate cause of the collision in question.

That question, under the facts in this case, is necessarily for the jury. [Citations] * * *

"It is the settled rule of law in this state that where the evidence shows that an injury results from the negligence of two agencies, the question of proximate cause is peculiarly one for the jury. [Citations]."

In Lindquist v. Des Moines Union Ry. Co., 239 Iowa 356, 371, 30 N.W.2d 120, 127, plaintiff was injured while riding as a passenger in an automobile which ran into the side of defendant's standing train blocking a public crossing at night. In reversing the ruling of the trial court, this court said:

"The established rule in this state has been that whether negligence is a proximate cause of an injury is always a question for the jury when different minds might reasonably reach different conclusions. [Citations]

"While it is true that the act of Wyant in driving his car into the standing car was an intervening cause, yet this does not as a matter of law make it the sole proximate cause such as to relieve appellee. If negligence existed, it was a continuing negligence so long as the crossing was blocked without adequate signals. Assuming Wyant to have been negligent, still, but for the continuing negligence of appellee presumably no accident would have occurred. A subsequent and independent intervening cause will not absolve a defendant of negligence if it might reasonably have been foreseen. [Citations] If the original wrong concurs with the intervening cause and both act proximately in producing the injury, both, as a rule, are proximate causes. Judd v. Rudolph, 207 Iowa 113, 222 N.W. 416, 62 A. L. R. 1174."

Knaus Truck Lines, Inc., v. Commercial Freight Lines, 238 Iowa 1356, 1366, 29 N.W.2d 204, 209, is somewhat factually similar to the case at bar. Defendants' two trucks illegally obstructed the highway at the bottom of an icy hill. A third truck descended the hill, was unable to stop and after colliding with the defendants' trucks careened into plaintiff's parked truck. We held the question of proximate cause was for the jury, stating:

"It is well settled that where a third party's subsequent act, whether negligent or not, is relied upon as an independent intervening cause it will not have that effect if it or a similar

act might reasonably have been foreseen. Webber v. Larimer Hdwe. Co., 234 Iowa 1381, 1387, 15 N.W.2d 286, 289, and authorities cited. \* \* \* That this issue, if it was such, was for the jury, not for the court, see Blessing v. Welding, 226 Iowa 1178, 1182–1185, 286 N.W. 436, and authorities cited; Johnson v. Overland Transp. Co., 227 Iowa 487, 498, 288 N.W. 601."

At page 480, 5A Am. Jur., Automobiles and Highway Traffic, section 403, it is stated:

"The negligence of the driver of a vehicle colliding with a bus stopped in violation of a statute requiring it to be parallel with, and within a specified distance of, the curb, is not an intervening cause relieving the bus owner of liability to a third person injured thereby where the collision was a reasonably foreseeable result of the original negligence of the bus driver. The owner of a motor vehicle parked in violation of an ordinance may be liable for injuries caused by his vehicle being struck by another car and thrown against the injured person."

Rule 344(f)10, Iowa Rules of Civil Procedure, provides:

"10. Generally questions of negligence, contributory negligence, and proximate cause are for the jury; it is only in exceptional cases that they may be decided as matters of law."

In the case at bar the jury could have found the negligence of defendants combined and concurred with acts of the transport driver. Indeed they could have found but for defendants' negligence the collision and resulting damages would not have occurred.

We hold the question of proximate cause was for the jury.

III. The real fighting issue stems from the court's ruling sustaining defendants' claim of immunity. The record discloses without dispute defendants were sued individually for alleged negligent acts committed while carrying out their duties as officers of the Iowa Highway Safety Patrol. Plaintiffs contend first, defendants have no immunity under the existing rules as established by our decided cases and, second, the judicial doctrine of sovereign immunity from ordinary torts is contrary to modern concepts of responsible government and should be abrogated.

While we have not been confronted with the precise question presented here, we hold our established principles compel us to agree with plaintiffs' first contention. A review of our decisions so demonstrates.

In Goold v. Saunders, 196 Iowa 380, 384, 194 N.W. 227, 228, we said:

"A public official may be guilty of negligence in the performance of official duties, for which his official character gives him no immunity."

In Rowley v. Cedar Rapids, 203 Iowa 1245, 212 N.W. 158, 53 A. L. R. 375, Kennedy, a city commissioner, was looking after business of the city, when plaintiff was struck by an automobile operated under the personal direction of the commissioner. The trial court sustained demurrers filed by the city and the commissioner. On appeal the ruling was sustained as to the city but reversed as to the commissioner. We said at page 1253, 212 N.W. at page 161:

"The fact that the defendant Kennedy was an officer of the city, and that, at the time, he was traveling the streets upon business of the city in its governmental capacity (if the petition be conceded to so show), did not relieve him from the duty to exercise ordinary care in so doing, or from a proper observance of a statutory requirement."

In Montanick v. McMillin, 225 Iowa 442, 280 N.W. 608, plaintiff was riding his bicycle on the sidewalk, a place of comparative safety, when defendant, a county-employee-trucker performing his official duties, drove the county truck into the quarry road, striking and severely injuring plaintiff. Defendant claimed immunity against plaintiff's claim based on misfeasance. We affirmed a $5000 judgment against the trucker. Many cases are reviewed in the opinion including Hibbs v. Independent School District, 218 Iowa 841, 251 N.W. 606, which it overruled. The Hibbs case had held a school bus driver immune from liability for injuries received by a pupil as a result of falling from the bus. In the Montanick case at page 454, 280 N.W., page 614, it is said:

"In the case of Hibbs v. Independent School District, 218 Iowa 841, 251 N.W. 606, this court made no distinction between

acts of misfeasance and acts of nonfeasance. However, it is interesting to note that the cases cited and relied upon in the Hibbs case are all cases of nonfeasance and there is not a single case cited that holds the agent or employee is not liable for an act of misfeasance. It is a well-established rule in this state that counties are not liable for torts growing out of the negligent acts of their agents or employees. Hilgers v. Woodbury County, 200 Iowa 1318, 206 N.W. 660. Nowhere, except in the Hibbs case, do we find that the agent or employee himself, when sued as an individual, rather than in his official capacity, is not liable for acts of misfeasance, that is, a positive negligent act which caused injury and damage to another."

The Montanick case quotes extensively from other jurisdictions, including Florio v. Mayor and Aldermen of Jersey City, 101 N. J. L. 535, 539, 129 A. 470, 471, 40 A. L. R. 1353, 1356:

" 'But it would be a travesty upon both law and justice to hold that, because of the gravity and importance of the duties cast upon him, he has become clothed with the privilege, while in the act of performing such duties, to thrust aside all ordinary prudence in driving along the public streets to the great hazard of life and limb of men, women and children of all classes and conditions, who may be upon the public highway. He must answer for his negligence, though in the performance of a public duty, in the same manner as if he were an individual in private life and had committed a wrong to the injury of another. The servant of the municipality is required to perform his duty in a proper and careful manner, and when he negligently fails to do so, and in the performance of his duty negligently injures another, his official cloak cannot properly be permitted to shield him against answering for his wrongful act to him who has suffered injury thereby.' * * *

"In Manwaring v. Geisler, 191 Ky. 532, 230 S.W. 918, 18 A. L. R. 192, where a police officer on a motor cycle struck and injured a child, that court said:

" 'Nor is a peace officer exonerated from liability for an injury inflicted while in the discharge of official duties on another on the ground of public necessity if the officer failed to exercise reasonable care for the protection of those whom he

knew or by the exercise of reasonable judgment should have expected to be at the place of the injury, although he may not be criminally liable.' "

The holding of the Montanick case is limited to acts of misfeasance. At page 458 of 225 Iowa, 280 N.W., page 616, it is said:

"An act of misfeasance is a positive wrong, and every employee, whether employed by a private person or a municipal corporation, owes a duty not to injure another by a negligent act of commission. It is the breach of this duty which the law imposes on all men that is involved, and this general obligation to injure no man by an act of misfeasance is neither increased nor diminished by the fact that the negligent party is an employee of a municipal corporation."

At page 459, 280 N.W. 617, the holding states:

"An employee of a city, county or state who commits a wrongful or tortious act, violates a duty which he owed to the one who is injured, and is personally liable."

In Shirkey v. Keokuk County, 225 Iowa 1159, 275 N.W. 706, 281 N.W. 837, plaintiff was injured while riding in an automobile owned and driven by her husband which collided with an unlighted Keokuk County tractor pulling a road maintainer. It was being operated on the wrong side of the road by defendant Kelly. We followed Montanick v. McMillin, supra, and held Kelly as an individual was liable for misfeasance although at the time he was engaged in his duties as a county employee.

In our most recent case of Moore v. Murphy, 254 Iowa 969, 119 N.W.2d 759, we again followed the Montanick case and held a sheriff may be liable for misfeasance resulting in injury to a county prisoner.

In an article carefully and capably prepared by J. Robert Hard, the Iowa law on immunity is reviewed in the May 1962 issue of the Drake Law Review, Volume 11, No. 2, pages 79 to 107. On page 106, the author states:

"In summary, if the individual employee is engaged in a ministerial act he may or may not be liable for his own negligence. The employee can escape liability under a cloak of governmental immunity in such cases only if: (1) the activity is

within the scope of the acts which he is authorized to perform, and (2) the negligence is a matter of nonfeasance. He may be held liable for his own negligence if: (1) the act was not within his scope of authority, or (2) for an act of misfeasance even if it is within his scope of authorization."

In the case at bar plaintiffs alleged acts of misfeasance by defendants. If defendants were negligent as charged they committed positive wrong. They owed a duty not to damage plaintiffs' property by one or more acts of commission in violation of the city ordinances or that standard of care required of an ordinarily prudent person. If otherwise engaged defendants would have been liable for plaintiffs' damages resulting from personal acts of misfeasance. Public service should not be a shield to protect them from the consequences of their personal misconduct.

Plaintiffs' contention that the judicial doctrine of sovereign immunity from ordinary torts is contrary to modern concepts of responsible government and should be abrogated is supported by a considerable trend among courts which have abolished the doctrine. In recent years much has been written by legal scholars criticizing this doctrine. It has been abrogated by many other courts. See Molitor v. Kaneland Community Unit District, 18 Ill.2d 11, 163 N.E.2d 89, 86 A. L. R.2d 469; Muskopf v. Corning Hospital District, 55 Cal.2d 211, 359 P.2d 457; Williams v. City of Detroit, 364 Mich. 231, 111 N.W.2d 1; Holytz v. City of Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618; Spanel v. Mounds View School District No. 621, Minn., 118 N.W.2d 795. However, our holding on plaintiffs' first contention makes it unnecessary to re-examine the entire doctrine of governmental immunity at this time.

For any who fear our holding may impair the established efficient service of the highway patrol or put an undue financial burden on public employees we call attention to sections 321.495–321.497, 332.3, 404.8, and 517A.1, 1962 Code. Section 517A.1 provides:

"Authority to purchase. All state commissions, departments, boards and agencies and all commissions, departments, boards, districts, municipal corporations and agencies of all political

subdivisions of the state of Iowa not otherwise authorized are hereby authorized and empowered to purchase and pay the premiums on liability, personal injury and property damage insurance covering all officers, proprietary functions and employees of such public bodies, including volunteer firemen, while in the performance of any or all of their duties including operating an automobile, truck, tractor, machinery or other vehicles owned or used by said public bodies, which insurance shall insure, cover and protect against individual personal, corporate or quasi corporate liability that said bodies or their officers or employees may incur."

This case is reversed and remanded for judgment on the verdict and costs.—Reversed.

All JUSTICES concur except SNELL, J., who takes no part.

HAYS, J., not sitting.