WIGGINS, Justice.
A plaintiff brought an action against the State of Iowa and individual defendants. The plaintiff named the individual defendants in their official and individual capacities. The attorney general certified under Iowa Code section 669.5(2)(a) (2011) that at certain times material to the plaintiffs allegations, the individual defendants were acting within the scope of their employment. Thus, certain immunities under Iowa Code section 669.14 applied to various counts of the petition. The district court held the attorney general’s certification was applicable to all of the plaintiffs claims. Consequently, the district court dismissed those counts alleging the individual defendants acted outside the scope of their employment.
On appeal, we hold the attorney general’s certification is not applicable to plaintiffs common law claims alleging the individual defendants acted outside the scope of their employment. Therefore, we remand the case back to the district court to allow the fact finder to decide whether the individual defendants’ actions were within each individual’s scope of employment.
I. Background Facts and Proceedings.
Christopher J. Godfrey is the workers’ compensation commissioner. In 2009, Governor Chet Culver appointed him to this position for a six-year term. God-frey’s term expires on April 30, 2015. Pri- or to July 2011, Godfrey’s salary was $112,068.84. '
On December 3, 2010, Governor-elect Terry Branstad demanded Godfrey’s resignation. Godfrey refused. After Godfrey’s refusal to resign, Godfrey alleges he had a meeting with the chief of staff to the governor, Jeffrey Boeyink, and the legal counsel to the governor, Brenna Findley, in which these individuals attempted to intimidate and harass him into resigning by threatening to reduce his salary. Godfrey again refused to resign. Subsequently, the Governor reduced Godfrey’s salary to $73,250.
In response to these actions, Godfrey filed an amended petition alleging causes of action against the State of Iowa; Terry Branstad, Governor of the State of Iowa, individually and in his official capacity; Kimberly Reynolds, Lieutenant Governor, individually and in her official capacity; Jeffrey Boeyink, chief of staff to the governor, individually and in his official capacity; Brenna Findley, legal counsel to the governor, individually and in her official capacity; Timothy Albrecht, communications director to the governor, individually and in his official capacity; and Teresa Wahlert, director of Iowa Workforce Development, individually and in her official capacity. The counts relevant to this appeal are counts VI through XVI: procedural and substantive due process claims against all defendants under the Iowa Constitution for Godfrey’s property interest in his employment; procedural and substantive due process claims against all defendants under the Iowa Constitution for Godfrey’s liberty interest in his reputation; an equal protection claim against the State under the Iowa Constitution; interference-with-contract-relations claims against the individual defendants; interference-with-prospective-business-advantage claims against the individual defendants; defamation claims against defendant Reynolds, defendant Albrecht, defendant Branstad, and defendant Boeyink; and extortion claims against defendant Findley and defendant Boeyink. By bringing his suit against defendants individually and in their official *581 capacities, Godfrey joined his claims against the individual defendants with his claims against the defendants in their official capacity. See Iowa R. Civ. P. 1.231 (allowing the joinder of multiple or alternative claims in a single petition against a single defendant under certain circumstances); id. r. 1.233 (allowing the joinder of multiple defendants in a single petition under certain circumstances).
The Iowa attorney general provided a certification pursuant to Iowa Code section 669.5(2)(a) certifying the individual defendants were acting within the scope of their employment at the time of the allegations contained in the amended petition. The defendants then moved to substitute the State of Iowa in place of the individual defendants for counts VI through XVI pursuant to Iowa Code section 669.5(2)(a). The relief asked for in the motion was to strike all references to the individual defendants in counts VI through XVI. The individual defendants did not ask the court to dismiss any counts of the petition.
Godfrey resisted the motion on two grounds. First, he argued the individual defendants were not acting within the scope of their employment, and therefore, were not subject to substitution based on the attorney general’s certification under section 669.5(2)(a). Second, he argued the substitution of the State for the named defendants in these counts did not automatically require dismissal of those counts.
The district court held a hearing on the motion to substitute. At the hearing, the district court asked Godfrey’s trial counsel if Godfrey was resisting any of the counts discussed in the partial summary judgment motion. Counsel responded as follows:
MS. CONLIN: I don’t think so, Your Honor.
We also agree that claims for prejudgment interest and punitive damages are not proper against the State, but we don’t think we ever pled them against the State. And if we did, that was a mistake. So this depends on the Court’s ruling as to the individual defendants.
In paragraph 4 — incidentally, Your Honor, paragraph 4 of our resistance we withdraw those claims, but I don’t think we want to withdraw them as to the individual defendants.
[[Image here]]
MS. CONLIN: .... And so it seems to us that we can maintain claims for prejudgment interest and for punitive damages against the individual defendants insofar as they are still parties to this proceeding.
And if I may say, Your Honor, in connection with our earlier motion, what the State says is that a state employee is for all times and all purposes cloaked with immunity for things like assault and battery. So if a state employee goes out at lunch, it’s a business lunch, and gets into a quarrel and knocks somebody down, the State says they are immune. And I say they are not.
[[Image here]]
MS. CONLIN: I think the State’s position on this is just untenable, and a state employee is a state employee when he or she is acting in the scope of employment, but not otherwise.
Trial counsel’s statements identify a distinction between the claims Godfrey made against the defendants in their official capacities, i.e., in their scope of employment where the court could properly substitute the State, and the claims Godfrey made against the defendants in their individual capacities.[1]
*582 Subsequent to the hearing, the parties agreed the district court should dismiss counts X through XV in their entirety if (1) the district court granted the defendants’ motion to substitute the State of Iowa, (2) the district court found against Godfrey on his claim that substitution of the State for the named defendants did not lead to the automatic dismissal of those counts, and (3) the district court decided the certification did not allow Godfrey to pursue his actions against the individual defendants who were not acting within the scope of their employment.[2] The district court granted the motion to substitute on counts VI through XVI and dismissed counts X through XV as per the parties’ agreement.
Godfrey applied for an interlocutory appeal, asking us to review the district court’s ruling to allow substitution and its dismissal of counts X through XV in reliance on the attorney general’s certification. We granted the application.
II. Issues.
The only issue on appeal is whether the attorney general’s certification pursuant to Iowa Code section 669.5(2)(a) is applicable to Godfrey’s common law claims alleging the individual defendants acted outside the scope of their employment.
III. Standard of Review.
Godfrey argues the district court’s finding was an improper statutory inter-pretation and this interpretation violated the Iowa Constitution. We review a district court’s statutory interpretation for correction of errors at law. See City of Postville v. Upper Explorerland Reg’l Planning Comm’n, 834 N.W.2d 1, 6 (Iowa 2013).
IV.Immunity for State Employees Under the Iowa Tort Claims Act.
The doctrine of sovereign immunity originally prohibited tort suits against the State of Iowa. Hansen v. State, 298 N.W.2d 263, 265 (Iowa 1980). Sovereign immunity also applied to governmental subdivisions. See, e.g., Canade, Inc. v. Town of Blue Grass, 195 N.W.2d 734, 736 (Iowa 1972) (recognizing the rule of governmental immunity applied to a claim of negligence against a municipality). This immunity was jurisdictional; thus, the courts lacked jurisdiction over tort actions against the State or its agencies. Lloyd v. State, 251 N.W.2d 551, 555 (Iowa 1977). In 1965, the general assembly enacted the Iowa Tort Claims Act and thereby waived the State’s sovereign immunity for certain tort claims against the State. See 1965 Iowa Acts ch. 79 (codified at Iowa Code ch. 25A (1966), current version at Iowa Code ch. 669). In 1968, the general assembly enacted the Municipal Tort Claims Act and similarly waived a political subdivision’s immunity for certain tort claims against a *583 political subdivision. See 1967 Iowa Acts ch. 405 (codified at Iowa Code ch. 613A (1971), current version at Iowa Code ch. 670).
However, prior to the waiver of sovereign immunity under the state and municipal tort claims acts, an individual could maintain a cause of action in tort against a government employee in his or her personal capacity. See Montanick v. McMillin, 225 Iowa 442, 459, 280 N.W. 608, 617 (1938). In Montanick, a plaintiff sued a Wapello County employee for monetary damages resulting from a car accident in which the employee was driving a municipal vehicle. Id. at 444-46, 280 N.W. at 609-10. The plaintiff voluntarily dismissed a cause of action against Wapello County and proceeded only against the employee in his individual capacity. Id. at 446, 280 N.W. at 610. We noted the employee’s liability did not relate to his employment, but stemmed from pure tort law. Id. at 452, 280 N.W. at 613.
We then identified a claim against an employee as involving potentially two separate actions. Id. at 453, 280 N.W. at 613-14. We recognized under the principle of respondeat superior a party could sue both the servant and the master. Id. This was an additional remedy to an injured party. Id. Thus, in theory an injured party could sue both the employee and the employer, though at this time if the employer was a governmental body, the employer was immune from suit. See id. at 453, 280 N.W. at 614. However, the exemption of governmental bodies from liability due to sovereign immunity did not extinguish the primary remedy that a person “who wrongfully inflicts injury upon another is liable to the injured person for damages.” Id. at 453, 280 N.W. at 614. We stated, “[pjublic service should not be a shield to protect a public servant from the consequences of his [or her] personal misconduct.” Id. at 455, 280 N.W. at 615. We also stated, “this general obligation to injure no man by an act of misfeasance is neither increased nor diminished by the fact that the negligent party is an employee of a municipal corporation.” Id. at 458, 280 N.W. at 616. We subsequently held “an employee of a city, county or state who commits a wrongful or tortious act, violates a duty which he owed to the one who is injured, and is personally liable.” Id. at 459, 280 N.W. at 617.
We applied the same reasoning to a claim against a state employee. Johnson v. Baker, 254 Iowa 1077, 1086-89, 120 N.W.2d 502, 507-09 (1963). In Johnson, we cited a Drake Law Review article as properly summarizing the law in this area. Id. at 1087-88, 120 N.W.2d at 508. The article examined governmental immunities and came to the following conclusion:
In summary, if the individual employee is engaged in a ministerial act he may or may not be liable for his own negligence. The employee can escape liability under a cloak of governmental immunity in such cases only if: (1) the activity is within the scope of the acts which he is authorized to perform, and (2) the negligence is a matter of nonfeasance. He may be held hable for his own negligence if: (1) the act was not within his scope of authority, or (2) for an act of misfeasance even if it is within his scope of authorization.
J. Robert Hard, Liability of Public Bodies, Officers, and Employees — Governmental Immunity, 11 Drake L.Rev. 79, 106 (1962). We have never applied sovereign immunity where state employees commit a tort when acting outside the scope of their employment.
After the enactment of the state and municipal tort claims acts, we continued to apply the rule that an employee can be hable for acts outside the scope of his or *584 her employment. See, e.g., Roberts v. Timmins, 281 N.W.2d 20, 24 (Iowa 1979). In Roberts, the plaintiff brought a claim against several municipal employees for preventing him “from continuing his auto repair business by shutting off his city water supply, issuing a ‘health denunciation’ and attempting to get a local utility to cut off his gas and electric service.” Id. at 21. The employees subsequently filed a motion to dismiss, arguing the plaintiffs claim failed because he did not follow the claim procedures under the Municipal Tort Claims Act. Id. The district court sustained the motion. Id. at 22. On appeal, we observed a person attempting to recover damages against a municipality or any of its officers, employees, or agents acting within the scope of their employment must follow the procedures of the Municipal Tort Claims Act to proceed. Id. at 24. Nonetheless, taking all well-pleaded facts as true, we found the plaintiff alleged the “defendants acted willfully, maliciously and without authorization outside the scope of their employment”; therefore, the procedures of the Municipal Tort Claims Act did not govern the action. See id. Accordingly, we reversed the district court and allowed the suit to continue until the evidence showed otherwise. See id.
In summary, even after the enactment of the state and municipal tort claims acts, the victim of a tort could sue an employee in his or her personal capacity for acts outside the scope of his or her employment.[3]
V. Certification Under Iowa Code Section 669.5(2)(a).
Prior to the passage of section 669.5(2)(a), the State protected its employees from the expense of defending a lawsuit by requiring the State to defend, indemnify, and hold harmless an employee from any claim against the employee, provided the employee performed the alleged actions within the scope of his or her employment. 1975 Iowa Acts ch. 80, § 7 (codified at Iowa Code § 25A.21 (1977), current version at Iowa Code § 669.21) (amending the Iowa Tort Claims Act to provide the State would defend state employees).
The general assembly added the certification provision in 2006 as an amendment to the Iowa Tort Claims Act. 2006 Iowa Acts ch. 1185, § 107 (codified at Iowa Code § 669.5(2)(a) (2008)). The language of the certification provision is similar to the language used by Congress in the Westfall Act. Compare Iowa Code § 669.5(2)(a) (2011), with 28 U.S.C. § 2679(d)(1) (2012). We also believe the general assembly’s purpose in amending the Iowa Tort Claims Act is the same purpose Congress intended when it passed the Westfall Act.
Congress enacted the Westfall Act in response to the United States Supreme Court decision in the case of Westfall v. Erwin. See 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), superseded by statute, Westfall Act, Pub.L. No. 100-694, 102 Stat. 4563, as recognized in Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 425, 115 S.Ct. 2227, 2232, 132 L.Ed.2d 375, 384-85 (1995). In Westfall, the Supreme Court limited a federal employee’s immunity from suit by finding immunity was only available to the employee when the employee both acted within the scope of his or her employment and the alleged wrongful act was discretionary in nature. Westfall, 484 U.S. at 300, 108 S.Ct. at 585, 98 *585 L.Ed.2d at 628. Congress responded by expanding immunity under the Westfall Act, finding the Westfall decision created a threat of increased personal tort litigation against federal employees. Lamagno, 515 U.S. at 425-26, 115 S.Ct. at 2232, 132 L.Ed.2d at 385.
Congress enacted the Westfall Act as an act independent of the Federal Tort Claims Act. Cf id. at 419-20, 115 S.Ct. at 2229, 132 L.Ed.2d at 381 (recognizing the Federal Tort Claims Act only came into play if the Attorney General certified the defendants as acting within the scope of their employment under the Westfall Act). As one court explained
the purpose of the Westfall Act is to assure that the decisions and conduct of federal public servants in the course of their work will not be adversely affected by fear of personal liability for money damages and of the burden of defending damage liability claims. Congress thus wished to grant immunity from both liability and litigation in those instances in which the employee was acting within the scope of his or her office or employment. At the same time, Congress wished to leave undisturbed the rights of those injured by federal employees who were not acting within the scope of their office or employment.
Melo v. Hafer, 13 F.3d 736, 744 (3d Cir. 1994).
The Westfall Act sets forth the procedure for the Attorney General to certify an employee was acting within the scope of his or her employment. When a person or entity sues an employee of the federal government, the employee delivers the suit papers to the Attorney General. 28 U.S.C. § 2679(c). The Attorney General then decides whether to provide the certification. If the Attorney General provides a certification and the plaintiff filed the action in state court, the action is removed to federal court. Id. § 2679(d)(2). The Supreme Court determined the Attorney General’s certification is reviewable. Lamagno, 515 U.S. at 434, 115 S.Ct. at 2236, 132 L.Ed.2d at 390. If the court finds the employee’s actions- are not within the scope of employment, the action proceeds as a regular tort claim.
YI. Analysis.
To decide this appeal, we do not need to decide whether the Iowa attorney general’s certification is reviewable. Rather, we must address whether the attorney general’s certification is applicable to claims alleging individual defendants were acting outside the scope of their employment. Congress enacted the Westfall Act independently of the Federal Tort Claims Act and set forth the procedure to follow when a person or entity sues a federal employee. Under the Westfall Act, the Attorney General may provide his certification in any action, even those not brought under the Federal Tort Claims Act. See id. at 419-20, 115 S.Ct. at 2229, 132 L.Ed.2d at 381 (affirming the Attorney General can provide a certification in a case that originated as a regular tort case filed in state court).
The general assembly included a similar certification provision in the Iowa Tort Claims Act. See Iowa Code § 669.5(2)(a). However, the first sentence of section 669.5 makes it clear the provisions of section 669.5 only apply to suits brought under the Iowa Tort Claims Act. See id. § 669.5(1) (“A suit shall not be permitted for a claim under this chapter unless the attorney general has made final disposition of the claim.” (Emphasis added.)).
By limiting the attorney general’s certification to actions where the plaintiff claims the employee is acting within the scope of his or her employment, we preserve one purpose of the certification pro *586 vision. Those employees who act within the scope of their employment are granted immunity from both liability and litigation and will not be adversely affected by fear of personal liability for money damages and the burden of defending damage liability claims.
A plaintiffs claim the state employee was not acting within the scope of his or her employment is not a claim brought under the Iowa Tort Claims Act. See id. § 669.2(8)(6) (defining “claim” for purposes of the Iowa Tort Claims Act as those claims against a state employee where the employee acts within the scope of his or her employment). Thus, we conclude the attorney general’s certification can only apply to actions brought under the Iowa Tort Claims Act and not those brought against an employee acting outside the scope of employment. Our holding in this regard also preserves the other purpose of the certification — to leave undisturbed the rights of those injured by state employees who were not acting within the scope of their employment.
Applying these principles, we recognize Godfrey has argued his claims against the individual defendants in their individual capacities do not derive from actions that occurred within the scope of their employment. Thus, the attorney general’s certification does not apply to his claims against the individual defendants in their individual capacities. These claims against the individual defendants in their individual capacities must proceed outside the Iowa Tort Claims Act until such time the fact finder establishes that at the time of the alleged actions, the individual defendants were acting within the scope of their employment. Generally in a tort action, the fact finder decides whether an act is within the employee’s scope of employment. See Godar v. Edwards, 588 N.W.2d 701, 706 (Iowa 1999). However, the State or an employee may file a motion for summary judgment to resolve this issue. See Boelman v. Grinnell Mwt. Reins. Co., 826 N.W.2d 494, 501 (Iowa 2013). (“We can resolve a matter on summary judgment if the record reveals a conflict concerning only the legal consequences of undisputed facts.”).
 If the court can resolve the scope of employment issue by sutnmary judgment, the court shall substitute the State as the defendant for the employee. If not, the employee will remain a defendant until the fact finder establishes that at the time of the alleged actions the employee was acting within the scope of his or her employment. If the fact finder establishes the employee was acting within the scope of his or her employment, the court shall substitute the State as the defendant for the employee.
Our decision today does not change the way the State has administered claims against state employees or open the floodgates for state employees to be sued individually and to pay the defense costs out of their own pockets when they commit a tort in the scope of their employment. First, it has always been the law of this State that when a public employee acts outside the scope of his or her employment, the employee is personally responsible for the cost of defense and any damages he or she may have caused. See Montanick, 225 Iowa at 455-57, 280 N.W. at 615; see also 4 Eugene McQuillen, The Law of Municipal Corporations § 12:269, at 400-13 (3d ed. rev.vol.2011).
For example, if a judge attends a board of supervisors meeting and protests the placement of a hog lot near his or her property and in doing so defames the hog lot owner, the public fisc should not be responsible to defend that judge or pay damages on behalf of that judge if the hog *587 lot owner is successful in his suit against the judge. The reason the public fisc is not at risk is that when the judge made the alleged defamatory remarks, he or she was not acting within the scope of his or her employment.
Second, the Iowa Code requires the State to defend, indemnify and hold harmless any employee whose tort was committed when the employee was acting in the scope of his or her employment. Iowa Code § 669.21. Moreover, we have previously held “[t]he duty to defend is broader than the duty to indemnify.” First Newton Nat’l Bank v. Gen. Cas. Co. of Wis., 426 N.W.2d 618, 630 (Iowa 1988). When a state employee is sued and the employee contends the suit arises out of actions performed in the employee’s scope of employment, the employee should deliver the suit papers to the attorney general and ask the State for indemnity under section 669.21. Section 669.21 requires the State to indemnify the employee if the employee was acting in the scope of his or her employment. See Iowa Code § 669.21. Thus, under the example discussed earlier, if the same judge allegedly makes a defamatory statement against an individual and a question exists as to whether he or she made the statement in the scope of his or her employment, the State has a duty to defend, indemnify and hold harmless the judge until such time as it is finally determined by a court the judge’s actions were outside the scope of his or her employment.[4]
When there is no factual dispute as to whether the employee was acting within the scope of his or her employment, the certification procedure relieves the employee of personal liability by substituting the State as the only defendant. However, when a factual dispute exists as to whether the state employee was acting within the scope of his or her employment, the court cannot substitute the State as the defendant until the court determines the employee acted within the scope of his or her employment. Otherwise, the attorney general could provide a certification when the employee was not acting within the scope of his or her employment and put the public fisc at risk when it has never previously been at risk.
In summary, where a question of fact exists as to whether a state employee’s actions were within the scope of his or her employment, the state employee is going to be defended, indemnified and held harmless from any damages and should not fear that his or her personal assets will be at risk, unless it is finally determined the employee was acting outside the scope of his or her employment. When a state employee acts outside the scope of his or her employment, the employee should be responsible for the attorney fees and the damages, not the public fisc.
For these reasons we hold the attorney general’s certification under Iowa Code section 669.5(2)(a) is not applicable to Godfrey’s claims that the individual defendants were acting outside the scope of their employment. In circumstances where the employee’s actions are not within the scope of their employment, the public fisc should not be used to pay for that employee’s defense or damages awarded a third party for that employee’s actions. The legislature has never authorized the expenditure of public funds to pay for the acts of its employees when done outside the scope of their employment. We are not going to do so today. Therefore, God-frey may proceed on these claims against the defendants individually until such time it is determined the defendants were acting within the scope of their employment.
*588 VII. Conclusion and Disposition.
We hold the Iowa Tort Claims Act only applies to torts committed by state employees when acting within the scope of their employment. Therefore, the certification provisions of section 669.5(2)(a) do not apply when state employees commit a tort when acting outside the scope of their employment. This holding upholds the purpose of the Act by relieving state employees of personal liability if their tort is committed when they were acting within the scope of their employment. At the same time, our holding protects the public fisc by making sure the State does not have to pay any defense costs or damages arising out of a tort committed by state employees acting outside the scope of their employment.
We reverse the judgment of the district court substituting the State in counts VI through XVI and dismissing counts X through XV in their entirety. We remand the case back to the district court to allow the fact finder to decide whether the individual defendants’ actions were within the scope of their employment for these counts.
• REVERSED AND CASE REMANDED.
All justices concur except WATERMAN and MANSFIELD, JJ., who dissent.

. In oral argument, Godfrey's counsel made the same assertion she made in the district *582 court. Specifically she stated:
I wanted to address some of the issues that you've raised. In my pleading I did not bring the action under the Iowa Tort Claims Act. Did I file with the Iowa Tort Claims Act people? Absolutely because it seems as though that was a good thing to do just in case but I didn't bring it that way. I brought it at common law. All six of the claims that were dismissed were brought at common law because I do not think that the Governor defamed Chris Godfrey in his scope of his employment.

. Godfrey's claims in counts X through XV included claims of interference with contract relations, interference with prospective business advantage, and defamation. Under Iowa Code section 669.14(4), the Iowa Tort Claims Act does not waive sovereign immunity for these claims. Thus, if the district court properly substituted the State in the place of the individual defendants for these claims, God-frey could not maintain these claims against the State.

. The Iowa Code provides, " '[a]cting within the scope of the employee's office or employment’ means acting in the employee’s line of duty as an employee of the state.” Iowa Code § 669.2(1) (emphasis omitted). We need not decide the meaning of this section to decide this appeal.

. This would include defending the judge through any appeals.