# IN THE SUPREME COURT OF IOWA

No. 12–2120

Filed June 6, 2014

**CHRISTOPHER J. GODFREY,**

Appellant,

vs.

**STATE OF IOWA; TERRY BRANSTAD,** Governor of the State of Iowa, Individually and in His Official Capacity; **KIMBERLY REYNOLDS,** Lieutenant Governor of the State of Iowa, Individually and in Her Official Capacity; **JEFF BOEYINK,** Chief of Staff to the Governor of the State of Iowa, Individually and in His Official Capacity; **BRENNA FINDLEY,** Legal Counsel to the Governor of the State of Iowa, Individually and in Her Official Capacity; **TIMOTHY ALBRECHT,** Communications Director to the Governor of the State of Iowa, Individually and in His Official Capacity; and **TERESA WAHLERT,** Director, Iowa Workforce Development, Individually and in Her Official Capacity,

Appellees.

---

Appeal from the Iowa District Court for Polk County, Robert A. Hutchison, Judge.

A claimant under the Iowa Tort Claims Act appeals a district court decision dismissing some of his claims. **REVERSED AND CASE REMANDED.**

Roxanne Barton Conlin of Roxanne Conlin & Associates, P.C., Des Moines, for appellant.

George A. LaMarca, Andrew H. Doane, and Phillip J. De Koster of LaMarca & Landry, P.C., Des Moines, for appellees.

Ryan G. Koopmans of Nyemaster Goode P.C., Des Moines, for amicus curiae National Governors Association.

**WIGGINS, Justice.**

A plaintiff brought an action against the State of Iowa and individual defendants. The plaintiff named the individual defendants in their official and individual capacities. The attorney general certified under Iowa Code section 669.5(2)(*a*) (2011) that at certain times material to the plaintiff's allegations, the individual defendants were acting within the scope of their employment. Thus, certain immunities under Iowa Code section 669.14 applied to various counts of the petition. The district court held the attorney general's certification was applicable to all of the plaintiff's claims. Consequently, the district court dismissed those counts alleging the individual defendants acted outside the scope of their employment.

On appeal, we hold the attorney general's certification is not applicable to plaintiff's common law claims alleging the individual defendants acted outside the scope of their employment. Therefore, we remand the case back to the district court to allow the fact finder to decide whether the individual defendants' actions were within each individual's scope of employment.

**I. Background Facts and Proceedings.**

Christopher J. Godfrey is the workers' compensation commissioner. In 2009, Governor Chet Culver appointed him to this position for a six-year term. Godfrey's term expires on April 30, 2015. Prior to July 2011, Godfrey's salary was $112,068.84.

On December 3, 2010, Governor-elect Terry Branstad demanded Godfrey's resignation. Godfrey refused. After Godfrey's refusal to resign, Godfrey alleges he had a meeting with the chief of staff to the governor, Jeffrey Boeyink, and the legal counsel to the governor, Brenna Findley, in which these individuals attempted to intimidate and harass him into

resigning by threatening to reduce his salary. Godfrey again refused to resign. Subsequently, the Governor reduced Godfrey's salary to $73,250.

In response to these actions, Godfrey filed an amended petition alleging causes of action against the State of Iowa; Terry Branstad, Governor of the State of Iowa, individually and in his official capacity; Kimberly Reynolds, Lieutenant Governor, individually and in her official capacity; Jeffrey Boeyink, chief of staff to the governor, individually and in his official capacity; Brenna Findley, legal counsel to the governor, individually and in her official capacity; Timothy Albrecht, communications director to the governor, individually and in his official capacity; and Teresa Wahlert, director of Iowa Workforce Development, individually and in her official capacity. The counts relevant to this appeal are counts VI through XVI: procedural and substantive due process claims against all defendants under the Iowa Constitution for Godfrey's property interest in his employment; procedural and substantive due process claims against all defendants under the Iowa Constitution for Godfrey's liberty interest in his reputation; an equal protection claim against the State under the Iowa Constitution; interference-with-contract-relations claims against the individual defendants; interference-with-prospective-business-advantage claims against the individual defendants; defamation claims against defendant Reynolds, defendant Albrecht, defendant Branstad, and defendant Boeyink; and extortion claims against defendant Findley and defendant Boeyink. By bringing his suit against defendants individually and in their official capacities, Godfrey joined his claims against the individual defendants with his claims against the defendants in their official capacity. *See* Iowa R. Civ. P. 1.231 (allowing the joinder of multiple or alternative claims in a single petition against a single defendant under

certain circumstances); *id.* r. 1.233 (allowing the joinder of multiple defendants in a single petition under certain circumstances).

The Iowa attorney general provided a certification pursuant to Iowa Code section 669.5(2)(*a*) certifying the individual defendants were acting within the scope of their employment at the time of the allegations contained in the amended petition. The defendants then moved to substitute the State of Iowa in place of the individual defendants for counts VI through XVI pursuant to Iowa Code section 669.5(2)(*a*). The relief asked for in the motion was to strike all references to the individual defendants in counts VI through XVI. The individual defendants did not ask the court to dismiss any counts of the petition.

Godfrey resisted the motion on two grounds. First, he argued the individual defendants were not acting within the scope of their employment, and therefore, were not subject to substitution based on the attorney general's certification under section 669.5(2)(*a*). Second, he argued the substitution of the State for the named defendants in these counts did not automatically require dismissal of those counts.

The district court held a hearing on the motion to substitute. At the hearing, the district court asked Godfrey's trial counsel if Godfrey was resisting any of the counts discussed in the partial summary judgment motion. Counsel responded as follows:

> MS. CONLIN: I don't think so, Your Honor.
>
> We also agree that claims for prejudgment interest and punitive damages are not proper against the State, but we don't think we ever pled them against the State. And if we did, that was a mistake. So this depends on the Court's ruling as to the individual defendants.
>
> In paragraph 4 –incidentally, Your Honor, paragraph 4 of our resistance we withdraw those claims, but I don't think we want to withdraw them as to the individual defendants.

. . . .

MS. CONLIN: . . . . And so it seems to us that we can maintain claims for prejudgment interest and for punitive damages against the individual defendants insofar as they are still parties to this proceeding.

And if I may say, Your Honor, in connection with our earlier motion, what the State says is that a state employee is for all times and all purposes cloaked with immunity for things like assault and battery. So if a state employee goes out at lunch, it's a business lunch, and gets into a quarrel and knocks somebody down, the State says they are immune. And I say they are not.

. . . .

MS. CONLIN: I think the State's position on this is just untenable, and a state employee is a state employee when he or she is acting in the scope of employment, but not otherwise.

Trial counsel's statements identify a distinction between the claims Godfrey made against the defendants in their official capacities, i.e., in their scope of employment where the court could properly substitute the State, and the claims Godfrey made against the defendants in their individual capacities.[1]

Subsequent to the hearing, the parties agreed the district court should dismiss counts X through XV in their entirety if (1) the district court granted the defendants' motion to substitute the State of Iowa, (2) the district court found against Godfrey on his claim that substitution of

---

[1]In oral argument, Godfrey's counsel made the same assertion she made in the district court. Specifically she stated:

I wanted to address some of the issues that you've raised. In my pleading I did not bring the action under the Iowa Tort Claims Act. Did I file with the Iowa Tort Claims Act people? Absolutely because it seems as though that was a good thing to do just in case but I didn't bring it that way. I brought it at common law. All six of the claims that were dismissed were brought at common law because I do not think that the Governor defamed Chris Godfrey in his scope of his employment.

the State for the named defendants did not lead to the automatic dismissal of those counts, and (3) the district court decided the certification did not allow Godfrey to pursue his actions against the individual defendants who were not acting within the scope of their employment.[2] The district court granted the motion to substitute on counts VI through XVI and dismissed counts X through XV as per the parties' agreement.

Godfrey applied for an interlocutory appeal, asking us to review the district court's ruling to allow substitution and its dismissal of counts X through XV in reliance on the attorney general's certification. We granted the application.

## II. Issues.

The only issue on appeal is whether the attorney general's certification pursuant to Iowa Code section 669.5(2)(*a*) is applicable to Godfrey's common law claims alleging the individual defendants acted outside the scope of their employment.

## III. Standard of Review.

Godfrey argues the district court's finding was an improper statutory interpretation and this interpretation violated the Iowa Constitution. We review a district court's statutory interpretation for correction of errors at law. *See City of Postville v. Upper Explorerland Reg'l Planning Comm'n*, 834 N.W.2d 1, 6 (Iowa 2013).

---

[2]Godfrey's claims in counts X through XV included claims of interference with contract relations, interference with prospective business advantage, and defamation. Under Iowa Code section 669.14(4), the Iowa Tort Claims Act does not waive sovereign immunity for these claims. Thus, if the district court properly substituted the State in the place of the individual defendants for these claims, Godfrey could not maintain these claims against the State.

**IV. Immunity for State Employees Under the Iowa Tort Claims Act.**

The doctrine of sovereign immunity originally prohibited tort suits against the State of Iowa. *Hansen v. State*, 298 N.W.2d 263, 265 (Iowa 1980). Sovereign immunity also applied to governmental subdivisions. *See, e.g., Canade, Inc. v. Town of Blue Grass*, 195 N.W.2d 734, 736 (Iowa 1972) (recognizing the rule of governmental immunity applied to a claim of negligence against a municipality). This immunity was jurisdictional; thus, the courts lacked jurisdiction over tort actions against the State or its agencies. *Lloyd v. State*, 251 N.W.2d 551, 555 (Iowa 1977). In 1965, the general assembly enacted the Iowa Tort Claims Act and thereby waived the State's sovereign immunity for certain tort claims against the State. *See* 1965 Iowa Acts ch. 79 (codified at Iowa Code ch. 25A (1966), current version at Iowa Code ch. 669). In 1968, the general assembly enacted the Municipal Tort Claims Act and similarly waived a political subdivision's immunity for certain tort claims against a political subdivision. *See* 1967 Iowa Acts ch. 405 (codified at Iowa Code ch. 613A (1971), current version at Iowa Code ch. 670).

However, prior to the waiver of sovereign immunity under the state and municipal tort claims acts, an individual could maintain a cause of action in tort against a government employee in his or her personal capacity. *See Montanick v. McMillin*, 225 Iowa 442, 459, 280 N.W. 608, 617 (1938). In *Montanick*, a plaintiff sued a Wapello County employee for monetary damages resulting from a car accident in which the employee was driving a municipal vehicle. *Id.* at 444–46, 280 N.W. at 609–10. The plaintiff voluntarily dismissed a cause of action against Wapello County and proceeded only against the employee in his individual capacity. *Id.* at 446, 280 N.W. at 610. We noted the employee's liability did not relate

to his employment, but stemmed from pure tort law. *Id.* at 452, 280 N.W. at 613.

We then identified a claim against an employee as involving potentially two separate actions. *Id.* at 453, 280 N.W. at 613–14. We recognized under the principle of respondeat superior a party could sue both the servant and the master. *Id.* This was an additional remedy to an injured party. *Id.* Thus, in theory an injured party could sue both the employee and the employer, though at this time if the employer was a governmental body, the employer was immune from suit. *See id.* at 453, 280 N.W. at 614. However, the exemption of governmental bodies from liability due to sovereign immunity did not extinguish the primary remedy that a person "who wrongfully inflicts injury upon another is liable to the injured person for damages." *Id.* at 453, 280 N.W. at 614. We stated, "[p]ublic service should not be a shield to protect a public servant from the consequences of his [or her] personal misconduct." *Id.* at 455, 280 N.W. at 615. We also stated, "this general obligation to injure no man by an act of misfeasance is neither increased nor diminished by the fact that the negligent party is an employee of a municipal corporation." *Id.* at 458, 280 N.W. at 616. We subsequently held "an employee of a city, county or state who commits a wrongful or tortious act, violates a duty which he owed to the one who is injured, and is personally liable." *Id.* at 459, 280 N.W. at 617.

We applied the same reasoning to a claim against a state employee. *Johnson v. Baker*, 254 Iowa 1077, 1086–89, 120 N.W.2d 502, 507–09 (1963). In *Johnson,* we cited a *Drake Law Review* article as properly summarizing the law in this area. *Id.* at 1087–88, 120 N.W.2d at 508. The article examined governmental immunities and came to the following conclusion:

> In summary, if the individual employee is engaged in a ministerial act he may or may not be liable for his own negligence.  The employee can escape liability under a cloak of governmental immunity in such cases only if: (1) the activity is within the scope of the acts which he is authorized to perform, *and* (2) the negligence is a matter of nonfeasance.  He may be held liable for his own negligence if: (1) the act was not within his scope of authority, *or* (2) for an act of misfeasance even if it is within his scope of authorization.

J. Robert Hard, *Liability of Public Bodies, Officers, and Employees — Governmental Immunity*, 11 Drake L. Rev. 79, 106 (1962).  We have never applied sovereign immunity where state employees commit a tort when acting outside the scope of their employment.

After the enactment of the state and municipal tort claims acts, we continued to apply the rule that an employee can be liable for acts outside the scope of his or her employment.  *See, e.g.*, *Roberts v. Timmins*, 281 N.W.2d 20, 24 (Iowa 1979).  In *Roberts*, the plaintiff brought a claim against several municipal employees for preventing him "from continuing his auto repair business by shutting off his city water supply, issuing a 'health denunciation' and attempting to get a local utility to cut off his gas and electric service."  *Id.* at 21.  The employees subsequently filed a motion to dismiss, arguing the plaintiff's claim failed because he did not follow the claim procedures under the Municipal Tort Claims Act.  *Id.*  The district court sustained the motion.  *Id.* at 22.  On appeal, we observed a person attempting to recover damages against a municipality or any of its officers, employees, or agents acting within the scope of their employment must follow the procedures of the Municipal Tort Claims Act to proceed.  *Id.* at 24.  Nonetheless, taking all well-pleaded facts as true, we found the plaintiff alleged the "defendants acted willfully, maliciously and without authorization outside the scope of their employment"; therefore, the procedures of the Municipal Tort Claims Act

did not govern the action. *See id.* Accordingly, we reversed the district court and allowed the suit to continue until the evidence showed otherwise. *See id.*

In summary, even after the enactment of the state and municipal tort claims acts, the victim of a tort could sue an employee in his or her personal capacity for acts outside the scope of his or her employment.[3]

## V. Certification Under Iowa Code Section 669.5(2)(*a*).

Prior to the passage of section 669.5(2)(*a*), the State protected its employees from the expense of defending a lawsuit by requiring the State to defend, indemnify, and hold harmless an employee from any claim against the employee, provided the employee performed the alleged actions within the scope of his or her employment. 1975 Iowa Acts ch. 80, § 7 (codified at Iowa Code § 25A.21 (1977), current version at Iowa Code § 669.21) (amending the Iowa Tort Claims Act to provide the State would defend state employees).

The general assembly added the certification provision in 2006 as an amendment to the Iowa Tort Claims Act. 2006 Iowa Acts ch. 1185, § 107 (codified at Iowa Code § 669.5(2)(*a*) (2008)). The language of the certification provision is similar to the language used by Congress in the Westfall Act. *Compare* Iowa Code § 669.5(2)(*a*) (2011), *with* 28 U.S.C. § 2679(d)(1) (2012). We also believe the general assembly's purpose in amending the Iowa Tort Claims Act is the same purpose Congress intended when it passed the Westfall Act.

---

[3]The Iowa Code provides, " '[a]cting within the scope of the employee's office or employment' means acting in the employee's line of duty as an employee of the state." Iowa Code § 669.2(1) (emphasis omitted). We need not decide the meaning of this section to decide this appeal.

Congress enacted the Westfall Act in response to the United States Supreme Court decision in the case of *Westfall v. Erwin*. *See* 484 U.S. 292, 108 S. Ct. 580, 98 L. Ed. 2d 619 (1988), *superseded by statute*, Westfall Act, Pub. L. No. 100-694, 102 Stat. 4563, *as recognized in Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 425, 115 S. Ct. 2227, 2232, 132 L. Ed. 2d 375, 384–85 (1995). In *Westfall*, the Supreme Court limited a federal employee's immunity from suit by finding immunity was only available to the employee when the employee both acted within the scope of his or her employment *and* the alleged wrongful act was discretionary in nature. *Westfall*, 484 U.S. at 300, 108 S. Ct. at 585, 98 L. Ed. 2d at 628. Congress responded by expanding immunity under the Westfall Act, finding the *Westfall* decision created a threat of increased personal tort litigation against federal employees. *Lamagno*, 515 U.S. at 425–26, 115 S. Ct. at 2232, 132 L. Ed. 2d at 385.

Congress enacted the Westfall Act as an act independent of the Federal Tort Claims Act. *Cf. id.* at 419–20, 115 S. Ct. at 2229, 132 L. Ed. 2d at 381 (recognizing the Federal Tort Claims Act only came into play if the Attorney General certified the defendants as acting within the scope of their employment under the Westfall Act). As one court explained

> the purpose of the Westfall Act is to assure that the decisions and conduct of federal public servants in the course of their work will not be adversely affected by fear of personal liability for money damages and of the burden of defending damage liability claims. Congress thus wished to grant immunity from both liability and litigation in those instances in which the employee was acting within the scope of his or her office or employment. At the same time, Congress wished to leave undisturbed the rights of those injured by federal employees who were not acting within the scope of their office or employment.

*Melo v. Hafer*, 13 F.3d 736, 744 (3d Cir. 1994).

The Westfall Act sets forth the procedure for the Attorney General to certify an employee was acting within the scope of his or her employment. When a person or entity sues an employee of the federal government, the employee delivers the suit papers to the Attorney General. 28 U.S.C. § 2679(c). The Attorney General then decides whether to provide the certification. If the Attorney General provides a certification and the plaintiff filed the action in state court, the action is removed to federal court. *Id.* § 2679(d)(2). The Supreme Court determined the Attorney General's certification is reviewable. *Lamagno*, 515 U.S. at 434, 115 S. Ct. at 2236, 132 L. Ed. 2d at 390. If the court finds the employee's actions are not within the scope of employment, the action proceeds as a regular tort claim.

**VI. Analysis.**

To decide this appeal, we do not need to decide whether the Iowa attorney general's certification is reviewable. Rather, we must address whether the attorney general's certification is applicable to claims alleging individual defendants were acting outside the scope of their employment. Congress enacted the Westfall Act independently of the Federal Tort Claims Act and set forth the procedure to follow when a person or entity sues a federal employee. Under the Westfall Act, the Attorney General may provide his certification in any action, even those not brought under the Federal Tort Claims Act. *See id.* at 419–20, 115 S. Ct. at 2229, 132 L. Ed. 2d at 381 (affirming the Attorney General can provide a certification in a case that originated as a regular tort case filed in state court).

The general assembly included a similar certification provision in the Iowa Tort Claims Act. *See* Iowa Code § 669.5(2)(*a*). However, the first sentence of section 669.5 makes it clear the provisions of section

669.5 only apply to suits brought under the Iowa Tort Claims Act. *See id.* § 669.5(1) ("A suit shall not be permitted for a claim *under this chapter* unless the attorney general has made final disposition of the claim." (Emphasis added.)).

By limiting the attorney general's certification to actions where the plaintiff claims the employee is acting within the scope of his or her employment, we preserve one purpose of the certification provision. Those employees who act within the scope of their employment are granted immunity from both liability and litigation and will not be adversely affected by fear of personal liability for money damages and the burden of defending damage liability claims.

A plaintiff's claim the state employee was not acting within the scope of his or her employment is not a claim brought under the Iowa Tort Claims Act. *See id.* § 669.2(3)(*b*) (defining "claim" for purposes of the Iowa Tort Claims Act as those claims against a state employee where the employee acts within the scope of his or her employment). Thus, we conclude the attorney general's certification can only apply to actions brought under the Iowa Tort Claims Act and not those brought against an employee acting outside the scope of employment. Our holding in this regard also preserves the other purpose of the certification—to leave undisturbed the rights of those injured by state employees who were not acting within the scope of their employment.

Applying these principles, we recognize Godfrey has argued his claims against the individual defendants in their individual capacities do not derive from actions that occurred within the scope of their employment. Thus, the attorney general's certification does not apply to his claims against the individual defendants in their individual capacities. These claims against the individual defendants in their

individual capacities must proceed outside the Iowa Tort Claims Act until such time the fact finder establishes that at the time of the alleged actions, the individual defendants were acting within the scope of their employment. Generally in a tort action, the fact finder decides whether an act is within the employee's scope of employment. *See Godar v. Edwards*, 588 N.W.2d 701, 706 (Iowa 1999). However, the State or an employee may file a motion for summary judgment to resolve this issue. *See Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 501 (Iowa 2013). ("We can resolve a matter on summary judgment if the record reveals a conflict concerning only the legal consequences of undisputed facts.").

If the court can resolve the scope of employment issue by summary judgment, the court shall substitute the State as the defendant for the employee. If not, the employee will remain a defendant until the fact finder establishes that at the time of the alleged actions the employee was acting within the scope of his or her employment. If the fact finder establishes the employee was acting within the scope of his or her employment, the court shall substitute the State as the defendant for the employee.

Our decision today does not change the way the State has administered claims against state employees or open the floodgates for state employees to be sued individually and to pay the defense costs out of their own pockets when they commit a tort in the scope of their employment. First, it has always been the law of this State that when a public employee acts outside the scope of his or her employment, the employee is personally responsible for the cost of defense and any damages he or she may have caused. *See Montanick*, 225 Iowa at 455–

57, 280 N.W. at 615; *see also* 4 Eugene McQuillen, *The Law of Municipal Corporations* § 12:269, at 400–13 (3d ed. rev. vol. 2011).

For example, if a judge attends a board of supervisors meeting and protests the placement of a hog lot near his or her property and in doing so defames the hog lot owner, the public fisc should not be responsible to defend that judge or pay damages on behalf of that judge if the hog lot owner is successful in his suit against the judge. The reason the public fisc is not at risk is that when the judge made the alleged defamatory remarks, he or she was not acting within the scope of his or her employment.

Second, the Iowa Code requires the State to defend, indemnify and hold harmless any employee whose tort was committed when the employee was acting in the scope of his or her employment. Iowa Code § 669.21. Moreover, we have previously held "[t]he duty to defend is broader than the duty to indemnify." *First Newton Nat'l Bank v. Gen. Cas. Co. of Wis.*, 426 N.W.2d 618, 630 (Iowa 1988). When a state employee is sued and the employee contends the suit arises out of actions performed in the employee's scope of employment, the employee should deliver the suit papers to the attorney general and ask the State for indemnity under section 669.21. Section 669.21 requires the State to indemnify the employee if the employee was acting in the scope of his or her employment. *See* Iowa Code § 669.21. Thus, under the example discussed earlier, if the same judge allegedly makes a defamatory statement against an individual and a question exists as to whether he or she made the statement in the scope of his or her employment, the State has a duty to defend, indemnify and hold harmless the judge until

such time as it is finally determined by a court the judge's actions were outside the scope of his or her employment.[4]

When there is no factual dispute as to whether the employee was acting within the scope of his or her employment, the certification procedure relieves the employee of personal liability by substituting the State as the only defendant. However, when a factual dispute exists as to whether the state employee was acting within the scope of his or her employment, the court cannot substitute the State as the defendant until the court determines the employee acted within the scope of his or her employment. Otherwise, the attorney general could provide a certification when the employee was not acting within the scope of his or her employment and put the public fisc at risk when it has never previously been at risk.

In summary, where a question of fact exists as to whether a state employee's actions were within the scope of his or her employment, the state employee is going to be defended, indemnified and held harmless from any damages and should not fear that his or her personal assets will be at risk, unless it is finally determined the employee was acting outside the scope of his or her employment. When a state employee acts outside the scope of his or her employment, the employee should be responsible for the attorney fees and the damages, not the public fisc.

For these reasons we hold the attorney general's certification under Iowa Code section 669.5(2)(*a*) is not applicable to Godfrey's claims that the individual defendants were acting outside the scope of their employment. In circumstances where the employee's actions are not within the scope of their employment, the public fisc should not be used

---

[4]This would include defending the judge through any appeals.

to pay for that employee's defense or damages awarded a third party for that employee's actions. The legislature has never authorized the expenditure of public funds to pay for the acts of its employees when done outside the scope of their employment. We are not going to do so today. Therefore, Godfrey may proceed on these claims against the defendants individually until such time it is determined the defendants were acting within the scope of their employment.

### VII. Conclusion and Disposition.

We hold the Iowa Tort Claims Act only applies to torts committed by state employees when acting within the scope of their employment. Therefore, the certification provisions of section 669.5(2)(*a*) do not apply when state employees commit a tort when acting outside the scope of their employment. This holding upholds the purpose of the Act by relieving state employees of personal liability if their tort is committed when they were acting within the scope of their employment. At the same time, our holding protects the public fisc by making sure the State does not have to pay any defense costs or damages arising out of a tort committed by state employees acting outside the scope of their employment.

We reverse the judgment of the district court substituting the State in counts VI through XVI and dismissing counts X through XV in their entirety. We remand the case back to the district court to allow the fact finder to decide whether the individual defendants' actions were within the scope of their employment for these counts.

**REVERSED AND CASE REMANDED.**

All justices concur except Waterman and Mansfield, JJ., who dissent.

**WATERMAN**, **Justice (dissenting).**

I respectfully dissent for the reasons articulated in Justice Mansfield's dissent, which I join. I write separately to elaborate on the purposes behind the attorney general certification procedure and the statutory immunities undermined by the majority today. The legislature provided our public officials certain immunities from suit under the Iowa Tort Claims Act (ITCA), Iowa Code ch. 669 (2011), and a straightforward, simple certification procedure to extricate state employees from lawsuits arising from the performance of their duties. Iowa Code §§ 669.5(2) (certification), 669.14 (immunities), 669.21 (defense and indemnity). The intent of the legislature was to allow our state employees to do their jobs without fear of the expense, distraction, and risk of personal financial ruin caused by lawsuits.

Certification not only spares the public official the risk of a ruinous personal judgment, but also the costs of defending a lawsuit. As Voltaire famously reflected, " 'I was never ruined but twice: once when I lost a lawsuit, and once when I won one.' " *Aetna Cas. & Sur. Co. v. Leo A. Daly Co.*, 870 F. Supp. 925, 941 (S.D. Iowa 1994). Until today, our public officials sued personally for doing their jobs could quickly avoid the cost of defending the suit upon the attorney general's certification that they were acting within their scope of employment. The majority, however, remands this case to have the scope-of-employment issue determined by the fact finder, the jury. Significantly, under the majority's interpretation, a plaintiff suing any state official can sidestep the attorney general's certification merely by alleging the claim is brought against the defendant in his or her "individual capacity." By alleging that simple phrase, the employee could be denied indemnification for ongoing

defense costs. In effect, the majority creates an anticertification loophole that substitutes plaintiff's counsel for the attorney general to make the determination whether the defendant state employee must defend the lawsuit at his or her own expense. So now the state defendants are likely to remain personally entangled in costly litigation all the way through trial.

The majority asserts it is protecting the public fisc by sparing our state treasury the cost of defending lawsuits naming public officials in their individual capacity. But, who decides at the threshold of a lawsuit whether the state employee was acting within the scope of his or her employment—the Iowa Attorney General, to whom the legislature entrusted this determination? Or Godfrey's attorney, based on unproven allegations in the petition? Who is more likely to protect the public fisc? The attorney general, who is elected by the people of Iowa and accountable to the voters? Or a private lawyer for a claimant suing the State and state employees, whose attorney fee is contingent on a monetary recovery and increases with the size of the verdict or settlement? With good reason, our legislature enacted the certification procedure to empower the attorney general to decide the issue, with judicial review limited to cases where the attorney general refuses certification. *See* Iowa Code § 669.5(2); *see also id.* § 13.2 (defining duties of attorney general)[5].

---

[5]As relevant, Iowa Code section 13.2 provides:

1. It shall be the duty of the attorney general, except as otherwise provided by law to:

*a.* Prosecute and defend all causes in the appellate courts in which the state is a party or interested.

*b.* Prosecute and defend in any other court or tribunal, all actions and proceedings, civil or criminal, in which the state may be a

I predict the consequences of today's decision will be to hamper job performance by state officials and to deter good people from public service. Why take a government job if your personal savings could be lost in a lawsuit? Why give a negative job performance evaluation of someone you supervise if he can sue you personally for defamation and take that case all the way to trial?

In this case, for example, the plaintiff has sued the Governor for making "false, defamatory statements to news organizations, including WHO-Radio and WHO-TV," wherein the Governor "blamed Plaintiff for rising workers' compensation costs for Iowa businesses." Because it is important for public officials to communicate with the public, it has been the law for the last fifty years that defamation claims are not available against any public official who was acting in his or her official capacity. The attorney general, after independently reviewing the matter, found that the Governor was acting in his official capacity when he went on the radio and television to make these statements. The defamation claims were therefore dismissed, with the plaintiff being free to pursue his constitutional and discrimination claims. However, because the plaintiff

---

party or interested, when, in the attorney general's judgment, the interest of the state requires such action, or when requested to do so by the governor, executive council, or general assembly.

    *c.* Prosecute and defend all actions and proceedings brought by or against any state officer in the officer's official capacity.

    *d.* Prosecute and defend all actions and proceedings brought by or against any employee of a judicial district department of correctional services in the performance of an assessment of risk.

    *e.* Give an opinion in writing, when requested, upon all questions of law submitted by the general assembly or by either house thereof, or by any state officer, elective or appointive. Questions submitted by state officers must be of a public nature and relate to the duties of such officer.

included a bare allegation that the Governor was acting "individually and in his official capacity," the majority now strips the attorney general of his authority, revives the plaintiff's defamation claims, and puts the Governor in the position of having to defend them.

This will create a strong incentive for public officials to clam up and not participate in press conferences or allow media interviews. Is this what we want? Is it what the legislature intended? It should be noted that the decision in this case applies to all branches of government, including members of the general assembly. Allowing plaintiffs to sidestep the safeguards of the certification procedure will have a chilling effect on the willingness of state officials to answer questions about official actions or pending legislation. The price of the majority opinion will be less transparency and openness in our state government.

The majority ignores the admonitions our court reiterated just a few years ago on the important purposes served by immunities for public employees:

> As recognized at common law, public officers require this protection [(immunity)] to shield them from undue interference with their duties and from potentially disabling threats of liability.
>
> Without such protection, there is the danger that fear of being sued will dampen the ardor of all but the most resolute, or the most irresponsible, public officials in the unflinching discharge of their duties.

*Hlubek v. Pelecky*, 701 N.W.2d 93, 98 (Iowa 2005) (citations omitted) (internal quotation marks omitted); *cf. Hook v. Trevino*, 839 N.W.2d 434, 444 (Iowa 2013) ("We find it equally self-evident that the purpose of section 669.24 [volunteer immunity] is to encourage people to provide volunteer services to the state by removing the threat of personal

liability."). The certification procedure and accompanying immunities help our state officials execute their duties without being intimidated by the threat of personal liability. We should interpret the ITCA to effectuate that purpose, not undermine it. *See Harden v. State*, 434 N.W.2d 881, 884 (Iowa 1989) ("We seek a reasonable interpretation that will best effect the purpose of the [ITCA] . . . ."); *cf. Hlubek*, 701 N.W.2d at 98 (recognizing the importance of protecting school officials from personal liability).

Federal courts likewise have echoed the importance of immunity for public officials:

> The purpose of immunity is to protect "[t]he societal interest in providing such public officials with the maximum ability to deal fearlessly and impartially with the public at large. . . . The point of immunity for such officials is to forestall an atmosphere of intimidation that would conflict with their resolve to perform their designated functions in a principled fashion."

*El Dia, Inc. v. Rossello*, 20 F. Supp. 2d 296, 301 (D.P.R. 1998) (quoting *Clinton v. Jones*, 520 U.S. 681, 693, 117 S. Ct. 1636, 1644, 137 L. Ed. 2d 945, 960 (1997)), *aff'd El Dia, Inc. v. Rossello*, 165 F.3d 106, 108 (1st Cir. 1999). The Wisconsin Supreme Court elaborated on the public policies underlying immunity for public officials:

> These considerations have been variously identified in the cases as follows: (1) The danger of influencing public officers in the performance of their functions by the threat of lawsuit; (2) the deterrent effect which the threat of personal liability might have on those who are considering entering public service; (3) the drain on valuable time caused by such actions; (4) the unfairness of subjecting officials to personal liability for the acts of their subordinates; and (5) the feeling that the ballot and removal procedures are more appropriate methods of dealing with misconduct in public offic[e].

*Lister v. Bd. of Regents*, 240 N.W.2d 610, 621 (Wis. 1976). Each of the foregoing public policies is undermined by today's majority decision.

The district court correctly upheld the attorney general's certification in this case and dismissed the relevant claims against the defendants personally.  I would affirm.

Mansfield, J., joins this dissent.

**MANSFIELD, Justice (dissenting).**

I respectfully dissent. The majority's understanding of the Iowa Tort Claims Act is not what the plaintiff argued, is contrary to the language of the statute, and is unworkable as a practical matter. If we consider the argument that Christopher Godfrey actually made, both here and below, I think the district court made the right decision, and I would affirm.

### I.  The Majority's Reading of the Iowa Tort Claims Act.

Let me begin with the majority's reading of the Iowa Tort Claims Act (ITCA). According to the majority, a plaintiff who brings an action against state employees need only add to the case caption that each employee is being named "individually and in his [or her] official capacity." This small insertion then becomes a way for the plaintiff to have all the benefits of the ITCA while avoiding its adverse consequences.

Having used the "individual and official" language in the case caption, the plaintiff gets the ball rolling by submitting the entire dispute to the state appeal board, as the plaintiff did here. *See* Iowa Code § 669.3(2)–(3) (2011) (instructing a plaintiff to file a claim with the director of the department of management and granting state appeal board authority over claims). Assuming the board rejects the claim or doesn't act, the plaintiff can go to court, as the plaintiff did here. *See id.* § 669.5(1).

Next up is certification. If the attorney general certifies the defendants were state employees acting within the scope of their office or employment, the plaintiff gets the best of both worlds. As to any tort claims that are allowed under the ITCA, the employees are conclusively deemed to have acted within the scope of employment, the State is

substituted as a defendant, and the State is bound by the employees' actions and has to pay the bill for them. *See id.* §§ 669.5(2)(*a*), .21. On the other hand, with respect to tort claims that are not allowed under the ITCA because the State hasn't waived sovereign immunity, the plaintiff can freely argue the inconsistent position that the state employees were *not* acting within the scope of their office or employment. Furthermore, the plaintiff can take this inconsistent position without any repercussion, because the State is irrevocably on the hook for the covered claims. *See id.*

Now, one might say that a shrewd attorney general could refuse to make a certification, thereby keeping his or her options open. But this won't happen because, in that event, the defendants would file petitions asking the court to find they were acting within the scope of their employment. *See id.* § 669.5(2)(*b*). And assuming the court grants the petitions, the plaintiff would again have the best of both worlds. He or she would be able to argue the defendants *were not* acting within the scope of their office or employment with respect to uncovered tort claims, while benefiting from a prior conclusive determination that with respect to covered tort claims they *were* acting within the scope of their office or employment.

I disagree that the ITCA establishes such a no-lose proposition for the plaintiff, so long as the plaintiff is astute enough to include six words in the case caption—"individually and in his [or her] official capacity."

While the majority's position is a no-lose for the plaintiff, it is a lose-lose for the defendants. Instead of getting an early determination one way or the other that their liability will or will not be covered by the State, state employees are left hanging until trial or summary judgment with respect to the uncovered claims. Until the jury renders a verdict, if

there is any issue of fact, they won't know if they are going to have to pay damages out of their own pockets.

## II. How the ITCA Actually Works: The Plaintiff's Two Options.

In my view, this is wrong. I believe the law is straightforward and works like this: A plaintiff who believes he or she has been wronged by a state employee acting outside the scope of employment always has the option of bringing a stand-alone lawsuit against that employee without going through the ITCA presuit notice procedures. In that event, the burden shifts to the defendant to show he or she acted within the scope of employment and therefore the claim or claims are covered by the ITCA. *See, e.g.*, *Thomas v. Gavin*, 838 N.W.2d 518, 519–20 (Iowa 2013); *see also* Iowa Code § 669.2(3)–(4) (defining "claim" covered by the ITCA and "employee of the state").[6]

On the other hand, should the plaintiff choose to follow the ITCA presuit notice procedures and then file suit based upon that notice, the plaintiff becomes subject to the attorney general's certification with respect to *the entire suit*.

The statute in my view compels this interpretation by making it quite clear that certification applies to "suit[s]," not individual causes of action. *See* Iowa Code § 669.5. Thus, the ITCA first requires a "claim made under" the Act to be filed with the department of management. *See id.* § 669.3(2). Once the appeal board acts on the claim, or in the event

---

[6]In *Thomas*, for example, the defendants, whom the plaintiff had sued without going through ITCA procedures, moved for summary judgment. *See* 838 N.W.2d at 519. The district court granted summary judgment, finding that the defendants were employees of the State and that the plaintiffs' claims fell within the scope of the Act. *Id.* at 520. We ultimately reversed the grant of summary judgment. *Id.* at 527. Similarly, in *McGill v. Fish*, a state university employee filed a gross negligence claim against several coemployees, without going through ITCA procedures. *See* 790 N.W.2d 113, 116 (Iowa 2010). The State brought a motion to dismiss on behalf of the coemployees based on failure to exhaust administrative remedies, which the district court denied. *Id.* We ultimately reversed the denial of the motion. *Id.* at 121.

the board fails to act within six months, the plaintiff may bring a "suit" for the "claim." *See id.* § 669.5(1). This triggers the attorney general's certification power. *See id.* § 669.5(2)(*a*). The attorney general can then certify that a defendant in the "suit" was a state employee acting within the scope of the employee's office or employment at the time of the incident upon which the claim is based. *See id.* If that occurs, "the suit" shall be deemed to be an action against the State, and the State shall be substituted as the defendant in place of the employee. *See id.* Let me quote the entire language of the subsection:

> Upon certification by the attorney general that a defendant in a suit was an employee of the state acting within the scope of the employee's office or employment at the time of the incident upon which the claim is based, the suit commenced upon the claim shall be deemed to be an action against the state under the provisions of this chapter, and if the state is not already a defendant, the state shall be substituted as the defendant in place of the employee.

*Id.*

In short, the certification process operates on "the suit," not merely part of it, as the majority concludes. *See id.* Certification results in the state employee ceasing to be "a defendant," rather than just removing that employee from some parts of the case, as the majority would have it. *See id.*[7]

---

[7]I recognize the state employee would remain a defendant to the extent any civil rights claims are asserted against him or her under chapter 216. *See Vivian v. Madison*, 601 N.W.2d 872, 878 (Iowa 1999) ("The legislature's use of the words 'person' and 'employer' in section 216.6(1), and throughout the chapter, indicates a clear intent to hold a 'person' subject to liability separately and apart from the liability imposed on an 'employer.'"). That is because those claims are governed by a separate administrative regime that subjects supervisory employees who commit wrongful discrimination to personal liability. *Id.*

**III. Applying Those Principles Here.**

Here, Godfrey filed a petition naming the State and six state employees, including the Governor and Lieutenant Governor, as defendants. The body of the petition alleged various acts and causes of action, but did not indicate whether or not the defendants were acting within the scope of their office or employment when they committed those acts. As noted above, the caption listed each defendant followed by the words, "Individually and in His [or Her] Official Capacity."

Before bringing this petition in court, Godfrey submitted it in its entirety to the state appeal board. The amended petition actually says this. It recites, "On January 9, 2012, within two years of the acts of which he complains, Plaintiff filed with the State Appeals Board a State Tort Claims Act claims for the damages herein sought against the above-named state DEFENDANTS and the State of IOWA." The transcript of the appellate oral argument also confirms that Godfrey previously submitted everything to the state appeal board.[8]

For these reasons, I believe that the attorney general's certification affects the entire suit except for the civil rights claims. It results in the state employees no longer being defendants to any tort claims, exactly as section 669.5(2)(*a*) provides. And Godfrey has not heretofore disputed

---

[8]JUSTICE MANSFIELD: You gave the presuit notice—

MS. CONLIN: I did.

JUSTICE MANSFIELD: Did you include all of the claims including the defamation and extortion?

MS. CONLIN: Yes, sir, I did.

JUSTICE MANSFIELD: So when you say you didn't bring it under the Iowa Tort Claims Act, you followed the Iowa Tort Claims Act procedure, would that be fair.

MS. CONLIN: I absolutely followed the Iowa Tort Claims Act procedure before I went to court just in case.

that point. Instead, his position in the district court and this court was that the attorney general's certification was not conclusive and could be judicially reviewed. For example, his application for interlocutory review asserted as follows:

> Plaintiff respectfully requests that the Court grant interlocutory review of the District Court's ruling and find that an attorney general's certification in accordance with Iowa Code Chapter 669 is not conclusive as to whether the state defendants were acting within the scope of their employment for purposes of Plaintiff's claims and that judicial review of such certification is necessary and proper in the first instance, with the matter submitted as a question of fact for resolution by the jury.[9]

## IV. Is the Attorney General's Certification Reviewable?

I now turn to the question that Godfrey actually argued—i.e., whether the attorney general's certification is judicially reviewable. Here I would follow the well-reasoned opinion of the United States District Court for the Southern District of Iowa. *See Mills v. Iowa Bd. of Regents*, 770 F. Supp. 2d 986 (S.D. Iowa 2011). As that opinion demonstrates, the Iowa legislature intended to give final effect to the attorney general's

---

[9]Consider also the following excerpt from oral argument before this court, where the court and Godfrey's counsel discussed the possibility that certification might not affect Godfrey's individual capacity or "common law" claims:

> JUSTICE WIGGINS: Do you think that this Court could say that your causes of action and the last five or six counts are barred under the State Tort Claim Act if--say there is no review of the certification and we agree with Mr. LaMarca's argument and we say there is no review, it's final as to the State's Tort Claim Act, couldn't we also say that as to any common law action it would not be final after review?
>
> MS. CONLIN: I think that would be true, your Honor.
>
> JUSTICE WIGGINS: Then the burden would be on you to show it was outside the course of their employment in those other actions?
>
> MS. CONLIN: Yes, your Honor, and I wish I would have thought of that when I was in the district court but I did not.

certifications under the ITCA that state employees were acting in the scope of their employment. *See id.* at 994–96.

This system in no way works unfairness on plaintiffs. As I have already noted, a plaintiff always has the option of suing a state employee outside the ITCA on an allegation that the employee was not acting in the scope of state employment. This puts the employee in the position of having to prove to the satisfaction of an Iowa district court that the employee was acting in the scope of state employment. Godfrey here chose not to exercise that option.

On the other hand, if the plaintiff, as here, proceeds under the ITCA, then the certification process comes into play. Note again the wording of section 669.5(2)(*a*). When the attorney general certifies that a defendant was a state employee acting within the scope of state employment, the suit "shall" be deemed to be an action against the State under the provisions of this chapter. Iowa Code § 669.5(2)(*a*). The employee is removed from the case, and the State "shall" be substituted. *Id.*

This evenhanded system has benefits for the plaintiff. The plaintiff knows once and for all that a defendant with billions of dollars in assets, i.e., the State, will pay the bill if he or she prevails. Following certification, the plaintiff no longer has to worry about proving that a particular defendant acted in the scope of employment. The system also has benefits for the employee. The employee is removed from the lawsuit as an individual defendant and is not subject to liability. And it has benefits for the State. Certain kinds of claims—e.g., some but not all of the claims in this case—cannot be pursued.

Under section 669.5(2)(*b*), as I've already mentioned, if the attorney general refuses to make a certification that a state employee was acting

within the scope of his or her employment, *the defendant* may "petition the court . . . for the court to find and certify that the defendant was an employee of the state and was acting within the scope of the defendant's office or employment." *Id.* § 669.5(2)(*b*). However, there is no provision allowing *the plaintiff* to petition the court for review of the attorney general's certification. As the *Mills* court pointed out, the existence of a provision within section 669.5 allowing judicial review at the request of the defendant only is a powerful indicator that the legislature did not intend to allow judicial review of a certification at the plaintiff's request. 770 F. Supp. 2d at 995–96 ("This provision makes clear that if the Iowa legislature had intended to provide for judicial review over the Attorney General's certification, it certainly knew how to do so."); *see also Chiodo v. Section 43.24 Panel*, ___ N.W.2d ___, ___ (Iowa 2014) (plurality opinion) (applying this principle).

On first glance, that might seem unfair to the plaintiff. The defendant can get judicial review but the plaintiff cannot. But on a more thorough consideration, it isn't. Again, if the plaintiff believes the individual defendant was not acting in the scope of state employment, the plaintiff can always file a garden-variety lawsuit against that defendant in state court. That lawsuit will go forward against the individual defendant, unless the defendant in some way asserts the ITCA is applicable. The defendant's contention that the ITCA applies would then be ruled upon by the court. *See, e.g., Thomas*, 838 N.W.2d at 519–20; *cf. Minor v. State*, 819 N.W.2d 383, 405 (Iowa 2012) (finding that a claim against a department of human services employee was barred for failure to exhaust administrative remedies under the ITCA, even though the employee was sued individually).

In other words, a plaintiff who believes the defendant was not acting within the scope of his or her state employment can always get a judicial determination of that issue. The plaintiff simply has to sue that defendant in his or her individual capacity in state court without going through the ITCA. Yet the news for the plaintiff gets even better. Under our recent decision in *Rivera v. Woodward Resource Center*, even if the plaintiff guesses wrong and a judge later determines the defendant was acting within the scope of state employment, the plaintiff's deadline for filing a claim with the director of management under the ITCA is extended. *See* 830 N.W.2d 724, 725–26 (Iowa 2013).

So what Godfrey really wanted here was a second mechanism for judicial review, one not provided by Iowa law. I would deny that effort. I think section 669.5 is very clear. If the attorney general makes the certification, the action "shall" be deemed against the State and the State "shall" be substituted. Iowa Code § 669.5(2)(*a*). A denial of certification is reviewable at the request of the employee, but there is no provision for review of a certification.

## V. The Federal Precedents Under the Westfall Act.

Godfrey argues that we should follow the United States Supreme Court's interpretation of the Westfall Act, 28 U.S.C. § 2679(d)(1) (2012), which is part of the federal tort claims system. He cites *Walker v. State* for that proposition. 801 N.W.2d 548 (Iowa 2011). Yet in *Walker*, although we were interpreting a provision of the ITCA that had the same wording as the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–80, we did *not* follow the Supreme Court's interpretation. *See* 801 N.W.2d at 565–66. Instead, we followed a separate opinion written by Justice Scalia concurring in the judgment only. *See id.* (noting that "Justice Scalia wrote separately to voice his disagreement with the analysis

employed by the majority" and concluding "our analys[is] in our prior discretionary function cases [is] more in line with Justice Scalia's analysis"). In short, *Walker* was a case where we did not track the majority views of the United States Supreme Court in interpreting Iowa's own tort claims act.

In any event, what we have said is that we are guided by interpretations of the FTCA "when the wording of the two Acts is identical or similar." *Thomas*, 838 N.W.2d at 525. In *Thomas* and *Walker* it was. *Id.*; *Walker*, 801 N.W.2d at 565–66. Here it is not.

The Westfall Act, unlike the ITCA, has separate language providing that the attorney general's certification is "conclusive" in only one circumstance—namely removal. It reads in relevant part as follows:

> (1) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

> (2) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. *This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.*

> (3) In the event that the Attorney General has refused to certify scope of office or employment under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the

scope of his office or employment. Upon such certification by the court, such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d) (emphasis added).

Thus, by specifically stating that certification is conclusive in the context of removal, the Westfall Act allows for an inference that the attorney general's certification is not conclusive in situations other than removal. The ITCA contains no comparable language. The presence of the "conclusively" language was critical to the Supreme Court's decision in *Gutierrez de Martinez v. Lamagno*. *See* 515 U.S. 417, 433–34, 115 S. Ct. 2227, 2235–36, 132 L. Ed. 2d 375, 388–90 (1995). That language made the statute "reasonably susceptible to divergent interpretation" and thus allowed the Court to follow the interpretive principle "that executive determinations generally are subject to judicial review." *Id.* at 434, 115 S. Ct. at 2236, 132 L. Ed. 2d at 390.

Notably, four justices dissented in *Lamagno* and said that "a plain reading of the text" did not allow for judicial review of the attorney general's certification that the defendant was acting within the scope of his or her federal employment. *Id.* at 439–40, 115 S. Ct. at 2238–39, 132 L. Ed. 2d at 392–94 (Souter, J., dissenting). But for present purposes, as the district court emphasized in *Mills*, we need only focus on the relevant differences between the ITCA and federal law as revealed by the majority opinion in *Lamagno*. *Mills*, 770 F. Supp. 2d at 994–95. As the *Mills* court put it, "[I]t is the final sentence of the removal provision of § 2679(d)(2) that creates an ambiguity in the framework of the federal statute, leaving it open to judicial interpretation." *Id.* at 995 (citing

*Lamagno*, 515 U.S. at 434, 115 S. Ct. at 2236, 132 L. Ed. 2d at 390). And that final sentence is not present in the ITCA.

Furthermore, if you think about it, the different outcome in *Lamagno* makes sense. Suppose the federal judge who wrote *Mills* and I got into a public spat and said bad things about each other. (That would never happen, but let's assume it did for hypothetical purposes.) If he sued me for defamation in my personal capacity, I would have to defend the case personally or persuade *a court* that I was acting in the scope of my employment. On the other hand, if I sued him for defamation in his personal capacity, the United States Attorney General could unilaterally remove the case to federal court under Title 28 of the United States Code section 2679(d)(2). Then, but for *Lamagno*, the Attorney General could certify that this federal judge was acting in the scope of employment, thereby depriving me of my cause of action because, under both the ITCA and the FTCA, defamation claims are not available. In short, judicial review of certification is needed to plug a potential reviewability hole in the federal system, but not in the state system.[10]

The facts of *Lamagno* illustrate this point. Late at night, in Colombia, South America, a car driven by an allegedly intoxicated drug enforcement agent ran into the plaintiff's vehicle. 515 U.S. at 420–21,

---

[10]I acknowledge that the Alaska Supreme Court followed *Lamagno* in holding that a certification by the Alaska attorney general under Alaska's counterpart to the Westfall Act is judicially reviewable. *See State v. Heisey*, 271 P.3d 1082, 1088–91 (Alaska 2012). I believe *Lamagno* does not apply to the ITCA, for the reasons I have already explained. Regardless, the Alaska Supreme Court did not embrace my colleagues' view that certification can never occur when a state employee is named in his or her individual capacity. *See id.* at 1085–86 ("When a lawsuit is filed against state employees, AS 09.50.253(c) allows the Attorney General to determine whether the individually named defendants were acting within the scope of their employment during the conduct giving rise to the lawsuit."). Further, while the Alaska court recognized a right to judicial review, it emphasized that the review should be performed by a court, not by a jury, and should always occur before trial. *See id.* at 1090–91.

115 S. Ct. at 2229, 132 L. Ed. 2d at 381. The plaintiff sued the agent in the United States and maintained the agent had been acting in his personal capacity. The Attorney General, however, certified the agent had been acting in the scope of his employment when driving the vehicle. *Id.* at 421, 115 S. Ct. at 2230, 132 L. Ed. 2d at 382. At that point, the lawsuit ended, because the FTCA does not allow claims that arose in a foreign country, until the United States Supreme Court reversed and found the Attorney General's certification reviewable. *Id.* at 422–23, 115 S. Ct. at 2230–31, 132 L. Ed. 2d at 383.

That situation could not arise under the ITCA. Under the ITCA, if the defendant is sued in his or her personal capacity outside the framework of the ITCA, the case goes forward unless and until a court rules that the defendant was acting in the scope of state employment.

Still, *Lamagno* leads me to two additional observations regarding the majority opinion. First of all, if the majority is right, then the entire United States Supreme Court missed the boat in *Lamagno*. In a case where the plaintiff maintained the defendant had not been acting in the scope of his government employment, the Justices devoted many pages to debating a single fighting issue—i.e., whether the Attorney General's certification could be judicially reviewed or not. My colleagues indicate that this was wasted effort. So long as the complaint contained some allegation that the defendant was also being sued individually, the certification would have no impact. I think this would be a revelation for the Justices of the United States Supreme Court. To the contrary, the Westfall Act allows the Attorney General to issue a certification whether or not the employee has been sued in his individual capacity. *See, e.g.*, *Winters v. Taylor*, 333 Fed. Appx. 113, 116 (7th Cir. 2009) ("The Westfall Act, 28 U.S.C. § 2679, allows a federal employee sued in an individual

capacity to convert the action to one against the United States, thereby obtaining indirectly the benefit of the United States' sovereign immunity.").

The majority suggests the ITCA should be interpreted differently because "the first sentence of section 669.5 makes it clear the provisions of section 669.5 only apply to suits brought under the Iowa Tort Claims Act." But as I have already explained, this *is* a suit under the ITCA. It contains "a claim under [chapter 669]." *See* Iowa Code § 669.5(1).[11]

My second observation is that although the *Lamagno* decision went against the government, it protects government employees in an important, practical way. It does so by assuring the attorney general's certification, if challenged by the plaintiff, will be reviewed by "the District Court." *Lamagno*, 515 U.S. at 436–37, 115 S. Ct. at 2237, 132 L. Ed. 2d at 391. By contrast, as I have already noted, the majority's approach here simply renders the certification irrelevant and leaves the state employee dangling until trial or at best summary judgment, unable to ascertain whether he or she will or will not have personal liability. This seems to undermine one purpose of the ITCA, which is to encourage people to work for the government by providing safeguards if they are

---

[11]Furthermore, nothing in the Westfall Act affirmatively indicates the United States Attorney General's certification authority extends to cases where a federal employee has been sued in his or her individual capacity, but the statute has been uniformly interpreted as granting that authority, because otherwise it would make no sense. *See* 28 U.S.C. § 2679(b)(1) (stating that the remedy is exclusive for injury or property loss "arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment"); *see also, e.g.*, *Hamad v. Gates*, 732 F.3d 990, 994–95 (9th Cir. 2013); *Sharratt v. Murtha*, 437 F. App'x 167, 169 (3d Cir. 2011); *Parham v. Clinton*, 374 F. App'x 503, 506 (5th Cir. 2010); *Winters*, 333 Fed. Appx. at 116.

sued. Those safeguards mean little if the plaintiff can simply circumvent them by adding a few words in the caption of a lawsuit.[12]

## VI. Defense Costs.

I now turn to the subject of defense costs. Here we come to another flaw in the majority's opinion.

The majority says that the attorney general's certification authority only extends to claims as defined in section 669.2(3)(*b*). Such claims, in the majority's view, cannot include claims where the state employee is alleged to have acted in his or her individual capacity. Thus, for certification purposes, according to the majority, we go claim by claim and the allegations control.

However, when my colleagues get to the subject of defense costs, their reading of the statute changes. My colleagues say the State has a duty to defend the state employee if "a question exists" as to whether he or she was acting in the scope of employment, even if the plaintiff alleges the state employee was *not* acting in the scope of employment.[13]

How can this be? How can the certification authority be narrower than the authority to provide a defense? Iowa Code sections 669.21 and 669.5 incorporate the same definition of claim from Iowa Code section 669.2(3)(*b*). Thus, section 669.21, which the majority cites but does not quote, provides that the State "shall defend any employee, and shall

---

[12]As the United States Supreme Court has said, "the purpose of the Westfall Act [is] to shield covered employees not only from liability but from suit." *Osborn v. Haley*, 549 U.S. 225, 248, 127 S. Ct. 881, 898, 166 L. Ed. 2d 819, 841 (2007). I think the general assembly had the same purpose when it enacted section 669.5, modeled after the Westfall Act, in 2006. *See* 2006 Iowa Acts ch. 1185, § 107 (codified at Iowa Code § 669.5 (2007)).

[13]Who decides if "a question exists"? The majority does not say, but presumably this would be the attorney general. According to the majority, the employee "should deliver the suit papers to the attorney general."

indemnify and hold harmless an employee against any claim as defined in section 669.2, subsection 3, paragraph 'b.' " Iowa Code § 669.21.

I submit: Either you can go behind the allegations of individual capacity or you cannot. The majority cannot interpret the same statute—section 669.2(3)(*b*)—two different ways in the same opinion.

The majority justifies this contradiction by citing a private insurance case for the proposition that "[t]he duty to defend is broader than the duty to indemnify." *First Newton Nat'l Bank v. Gen. Cas. Co. of Wis.*, 426 N.W.2d 618, 630 (Iowa 1988). I do not follow the majority's reasoning. In *First Newton National Bank*, we held as a matter of insurance law that when a lawsuit includes covered and uncovered claims, the insurer has a duty to defend the entire lawsuit. *Id.* That case does not apply here because we are interpreting statutes and do not get to write the law ourselves. The legislature has defined the duty to defend and indemnify in section 669.21 based on the definition of claim in section 669.2(3)(*b*). We are constrained by those definitions. Either the statutory definition of claim allows the attorney general to look past the bare allegations to the underlying facts, or it doesn't. Chapter 669 will not support an interpretation that the attorney general gets to look beyond the bare allegations for defense and indemnification purposes but not for certification purposes.

In any event, *First Newton National Bank* does not go where the majority wants to go. That decision only imposes a duty to defend when a lawsuit includes both covered and uncovered claims, and thus would not apply to the majority's example of a state employee who is sued only in his or her individual capacity. Further, *First Newton National Bank* distinguishes the duty to defend from the duty to indemnify, whereas the majority is talking about something different and wants to distinguish

both of those duties from the ability to certify. For all these reasons, the majority's private insurance analogy falls apart on careful analysis.

I can understand the majority's reluctance to reach the logical conclusion of their reasoning and their desire to limit the collateral damage from today's opinion. Still, there should be no doubt that this reluctance leads them to interpret section 669.2(3)(*b*) in two different ways in the same opinion.

**VII. Conclusion.**

Offering a policy justification for today's decision, the majority says:

> In circumstances where the employee's actions are not within the scope of their employment, the public fisc should not be used to pay for that employee's defense or damages awarded a third party for that employee's actions. The legislature has never authorized the expenditure of public funds to pay for the acts of its employees when done outside the scope of their employment. We are not going to do so today.

No one disputes this broad proposition that the public should not pay for actions taken by state employees outside the scope of their employment, including the defense of lawsuits against those employees. The majority, in this regard, is attacking a straw man. The real issue we need to resolve is *who decides* the employee's status.

As I've already explained, I believe a plaintiff has two alternatives. If the plaintiff elects to proceed under the ITCA, then he or she authorizes *the attorney general to decide* whether the claims within that suit are in fact claims against a state employee in the scope of employment. Public funds will not pay for the defense of the employee unless the attorney general, an elected official answerable to the citizens of this State, makes this determination.

Alternatively, if the plaintiff wants to have a court decide whether the state employee acted within the scope of employment, he or she need only file a run-of-the-mill tort lawsuit against the employee. At that point, the employee must raise as a defense that he or she was acting within the scope of state employment. *A court would decide* whether the defense is valid.

In short, the ITCA contemplates a quick, early decision by either the attorney general or a court, depending on how the plaintiff chooses to bring his or her action. Either way, a third-party decision maker protects the public fisc. And the plaintiff, by choosing whether to proceed inside or outside the ITCA, gets to select that decision maker.

I want to note one further inconsistency in the majority opinion. The majority asserts that "our holding protects the public fisc by making sure the State does not have to pay any defense costs or damages arising out of a tort committed by state employees acting outside the scope of their employment." Yet just a few paragraphs before, the majority indicates that if a state employee is sued on an allegation that he or she acted outside the scope of employment, the public fisc must pay for the employee's defense if merely "a question exists" whether he or she acted in the scope of employment. Since a mere "question" in the eyes of the attorney general is enough to require the State to provide a defense, according to the majority, there obviously will be situations where the employee gets a state-paid defense even though it is later determined he or she was not acting in the course of employment.

Finally, I would like to close with a practical point. Notwithstanding the zealous and effective advocacy by both sides before this court, the attorney general's certification actually eliminates only a small part of Godfrey's case. It has no impact on Godfrey's civil rights

claims, including his allegation that he was discriminated against based on sexual orientation. Nor does it affect his constitutional claims or his extortion claim. The certification would only bar Godfrey's intentional interference and defamation claims, which are expressly exempt from the ITCA. *See* Iowa Code § 669.14(4). The FTCA has comparable exemptions. *See* 28 U.S.C. § 2680(h). Presumably, these exemptions are based on the general notion of giving public officials some leeway in speaking and acting when they are performing their job duties. My vote would be to preserve that leeway, by allowing the ITCA to operate as the legislature intended. Regardless, Godfrey would still have his full day in court on the discrimination and constitutional claims that are the core of his lawsuit.

Waterman, J. joins this dissent.